Sherwood, J.
I. The defendant alleges various grounds why the act under which he was convicted is unconstitutional. Among them these: “Because the act of the legislature under which the said information •was drawn, is unconstitutional and void, because it violates the following provisions of the constitution of the state of Missouri: First. ‘That all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry; sec. 4, art. 2.’ Second. ‘That no person shall be deprived of life, liberty or property with due process of law.’ Sec. 30, art. 2; Third. That the act of the legislature aforesaid violates the constitutional provision forbidding the legislature to grant ‘to any corporation, association or individual any special or exclusive right, privilege or *174 immunity.7 Sec. 53, art. 4. That the act aforesaid violates the fourteenth amendment to the constitution of the United States, which provides: ‘Nor ,shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.777
Eor the present purpose it will be assumed that defendant attempted to. do the act with which he is charged, arid that it lay in his power to compel or coerce Simmonds to withdraw from a lawful organization with which he was connected; because, by so doing all discussion of matters merely preliminary to the main question herein involved will be avoided.
A similar provision to that contained in section 30, article 2, supra, is found in the fifth amendment to the constitution of the United States, providing among other things, * * * “nor deprived of life, liberty or property without due process of law.77 In section 30, supra, as well as in a like section in the federal constitution just recited, it will be noted that the rights of life, liberty and property are grouped together in the same sentence; they constitute a trinity of rights, and each as opposed to unlawful deprivation thereof, is of equal constitutional importance. "With each of these rights, under the operation of a familiar principle, every auxiliary right, every attribute necessary to make the principal right effectual and valuable in its most extensive sense, pass as incidents of the original grant. “The rights thus guaranteed are something more than the mere privileges of locomotion; the guarantee is the negation of arbitrary power in every form which results in a deprivation of a right.77
These terms, “life,77 “liberty,77 and “property,77 are representative terms and cover every right to which a member of the body politic is entitled under the law. *175 Within their comprehensive scope are embraced the right of self-defense, freedom of speech, religious and political freedom, exemption from arbitrary arrests, the right to buy and sell as others, may — all our liberties — personal, civil, and political; in short, all that maltes life worth living; and of none of these liberties can anyone be deprived, except by due process of law. 2 Story, Const. [5 Ed.], sec. 1950.
Now, as before stated, each of the rights heretofore mentioned, carries with it as its natural and necessary coincident, all that effectuates and renders complete and full, unrestrained enjoyment of that right. Take for instance that of property, necessarily blended with that right are those of acquiring property by labor, by contract, and also of terminating that contract at pleasure, being liable, however, civilly for any unwarranted termination. In the case at bar, as will be remembered, the contract was not made for any definite period. Prom these premises it follows that, “depriving an owner of property of one of its essential attributes, is depriving him of his property within the constitutional provision.” People ex rel. v. Otis, 90 N. Y. 48.
In State v. Goodwill, 35 W. Va. 179, relative to the subject under consideration, it is said: “The right to use, buy, and sell property, and contract in respect thereto, including contracts for labor — which is, as we, have seen, property — is protected by the constitution.”
In the present instance does the act in question seek to deprive the owner or the representative of the owner of one of the essential attributes of his property, to wit, the right to terminate any contract made by him, and does it profess to do this by force of its own terms, and without opportunity of being heard? If it does, then it falls under the ban of the prohibitory provisions of both the state and federal constitutions.
*176 The “law of the land” and “due process of law” are the legal equivalents of each other. Touching this topic, a distinguished jurist observes: “Perhaps no definition is more often quoted than that given by Mr. Webster in the Dartmouth College Case: ‘By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities, under the protection of the general rules which govern society. Everything which may pass under the form of an enactment is not therefore to be considered the law of the land.’ ” Cooley, Const. Lim. [6 Ed.] 431.
Comstock, J., when discussing a constitutional prohibition such as ours, said: “No doubt, it seems to me, can be admitted of the meaning of these provisions. To say, as has been suggested, that ‘the law of the land’, or ‘due process of law’, may mean the very act of legislation which deprives the citizen of his rights, privileges or property, leads to a simple absurdity. The constitution would then mean, that no person shall be deprived of his property or rights, unless the legislature shall pass a law to effectuate the wrong, and this would be throwing the restraint entirely away.
-* * * Where rights of property are admitted to exist, the legislature can not say they shall' exist no longer; nor will it make any difference, although a process and a tribunal are appointed to execute the sentence. If this is the ‘law of the land’, and ‘due process of law,’ within the meaning of the constitution, then the legislature is omnipotent. It may, under the same interpretation, pass a law to take away liberty or life without a pre-existing cause, appointing judicial and executive agencies to execute its will. Property is placed by the constitution in the same category with *177 liberty and life.” Wynehamer v. People, 3 Kern. 378.
Here, the law under review declares that to be a crime, which consists alone in the exercise of a constitutional right, to 'wit, that >of terminating a contract, one of the essential attributes of property, indeed property itself, under preceding definitions. Brought to the bar of a court on such a charge, the accused would have been prejudged in so far as the criminality of the act charged is concerned; no question could there be made or admitted as to the quality of the act; that would have been settled by the previous' legislative declaration, and it would only remain to find the feet as charged, in order to declare the guilt is ’charged. But the fact as charged as already seen, is not a crime, and will not be a crime, so long as constitutional guarantees and constitutional prohibitions are respected and enforced.
If an owner, etc., obeys the law on which this prosecution rests, he is thereby deprived of a right and a liberty to contract or terminate a contract' as all others may; if He disobeys it, then he is punished for the performance of an act wholly innocent, unless indeed the doing of such act guaranteed by the organic law, the exercise of a right of which the legislature is forbidden to deprive him can, by that body, be conclusively pronounced criminal. We deny the power of the legislature to do this; to brand as an offense that which the constitution designates and declares to be a right, and therefore an innocent act, and consequently we hold that the statute which professes to exert such a power is nothing more nor less than a “legislative judgment,” and an attempt to deprive all who are included within its terms, of a constitutional right without due process of law. In support of these views see State v. Loomis, 115 Mo. 307; Com. v. Perry, 155 Mass. 117; Godcharles & Co. v. Wigeman, 113 Pa. St. *178 431; State v. Goodwill, 33 W. Va. 179; In re Jacobs, 98 N. Y. 98; People v. Gillson, 109 N. Y. 389; Millett v. People, 117 Ill. 294; Tilt v. People, 27 Chicago Leg. News, 270.
II. But the statute is obnoxious to criticism on other grounds. It does not relate to persons or things as a class; to all workingmen, etc., but only to those who belong to some “lawful organization or society,” evidently referring to a trade union, labor union, etc. Where a statute does this, where it does not relate to persons or things as a class, but to particular persons or things of a class, it is a special, as contradistinguished from a general law. State ex rel. v. Tolle, 71 Mo. 645; State ex rel. v. Herrmann, 75 Mo. 340.
Here a non trade union man, or non labor union man, could be discharged without ceremony, without let or hindrance, whenever the employer so desired, with or without reason therefor, while in the case of a trade union or labor union man he could not be discharged if such discharge rested on the ground of his being a member of such an organization. In other words, the legislature have undertaken to limit the power of the owner or employer as to his right to contract with, or to terminate a contract with, particular persons of a class, and therefore the statute which does this is a special, not a general law, and, therefore, violative of the constitution.
Judge Cooley says: “A statute would not be constitutional * * * which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. * * * Every one has a right to demand that hebe governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is *179 applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments.” Cooley, Const. [6 Ed.] 481-483.
The legislature may legislate in regard to a class of persons, but they can not take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each. This would be mere arbitrary classification without any basis of reason on which to rest, and would resemble a classification of men by the color of their hair or other individual peculiarities, something not competent for the legislature to do. State ex rel. v. Herrmann, 75 Mo. loc. cit. 353.
III. The litigated statute is also in conflict with section 1, article 14, of the federal constitution aforesaid, forbidding that “any state deprive any person of life, liberty or property without due process of law,” as to which the same considerations as heretofore announced apply.
IY. Nor can the statute escape censure by assuming the label of a police regulation. It has none of the elements or attributes which pertain to such a regulation, for it does not in terms or by implication promote, or tend to promote, the public health, welfare, comfort or safety; and if it did, the state would not be allowed under the guise and pretense of police regulation, to encroach or trample upon any of the just rights of the citizen, which the constitution intended to secure against diminution or abridgment. In re Jacobs, 98 N. Y. 98, and cases cited.
Y. In conclusion it may be said that there is. a - broad distinction between the invasion of a right con *180 ferred by tbe constitution, to wit, a right of property, carrying with it, as we have seen, all tbe liberties, attributes and coincident rights which go to effectuate the principal right, and those rights which are the mere creatures of legislative gratuity, where the legislature granting a privilege or bestowing a bounty, may, of course, as no constitutional right is involved, prescribe the conditions upon which the privilege may be exercised or the bounty be obtained. This point finds ample illustration in the recent cases of Frisbie v. United States, 157 U. S. 160, and City of St. Joseph v. Levin, 128 Mo. 588.
The premises considered, we reverse the judgment and order the defendant discharged.
All concur.