THE STATE v. WALSH, *Appellant.*

Division Two, December 15, 1896.

1. **General and Special Laws.** A statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is a special law.

2. **Constitutional Law:** POOL SELLING AND BOOKMAKING: SPECIAL LAW. The act of March 12, 1895 (Laws 1895, pages 150, 151) prohibiting pool selling, bookmaking, etc., "except on the premises or within the limits or inclosure of a regular race course," is violative of section 53, article 4, of the constitution declaring that "the general assembly shall not pass any local or special law * * * granting to any corporation or individual any special or exclusive right, privilege or immunity * * *."

*Appeal from St. Louis Court of Criminal Correction.*
HON. DAVID MURPHY, Judge.

REVERSED.

*T. J. Rowe* and *Morris, Butler & Fitzgerald* for appellant.

(1) The "bookmaking and pool selling act" of March 12, 1895, upon which the information herein is bottomed, grants special privileges and immunities in violation of section 15, article 2, and section 53, article 4, of the constitution of Missouri. *State v. Hayden,* 31 Mo. 35; *State v. Lemon,* 46 Mo. 375; *State v. Loomis,* 115 Mo. 307; *Swigart v. People,* 50 Ill. App. 185; *Swigart v. People,* 154 Ill. 284; *Brennan v. Racing Ass'n,* 63 N. Y. 188; *Winchester v. Nutter,* 52 N. H. 507; *Lynch v. Murphy,* 119 Mo. 163. (2) It violates the fourteenth amendment to the constitution of the United States, in denying the defendant equal protection of the law. *State v. Burgdoerfer,* 107 Mo. 1;

*Barbier v. Connolly*, 113 U. S. 27; *Missouri v. Lewis*, 101 U. S. 22; *Slaughterhouse Cases*, 16 Wall. 36; *Yickno v. Hopkins*, 118 U. S. 356; *Railroad v. Pennsylvania*, 134 U. S. 232; *Geoza v. Tiernan*, 148 U. S. 657.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The act of March 12, 1895 (Laws 1895, p. 150), in so far as it is objected to by defendant is similar to the act of April 1, 1891 (Laws 1891, p. 122), and this court in *State v. Burgdoerfer*, 107 Mo. 1, has held the act of 1891 constitutional—*first*, in regard to its title; *second*, that the prohibition of bookmaking and pool selling is within the police power of the state; and, *third*, that said act, being uniform in its application to all persons who come within its provisions, is not violative of the fourteenth amendment to the constitution of the United States. (2) Bookmaking and pool selling is but a form of gambling or keeping a gaming house, and these are offenses and not such rights, privileges and immunities as are guaranteed by section 15, article 2, constitution of Missouri, and of section 2, article 4, constitution of the United States. (3) The act of 1895, in regard to bookmaking and pool selling, is uniform in its application, operates upon all alike coming within its provisions, and in no way denies the defendant the equal protection of the law. Laws 1895, p. 150; *Hayes v. Missouri*, 120 U. S. 68; *Barbier v. Connolly*, 113 U. S. 27; *Missouri v. Lewis*, 101 U. S. 22. See *State v. Burgdoerfer*, 107 Mo. 1, in which the cases just cited are discussed by the supreme court of this state. (4) An ordinance—which it appears is an exact copy of a state statute as to all its material features—which imposes a penalty for bookmaking and pool selling

within the limits of a city, except in certain enumerated localities, is not void for unreasonableness, since the discrimination is not between persons, but between places, and the exception of certain localities does not authorize bookmaking and pool selling at such places. *People v. Brownell*, 34 N. E. Rep. (Ill.) 595; s. c., 14 L. R. A. 486.

SHERWOOD, J.—The defendant was prosecuted under the provisions of an act approved March 12, 1895, in relation to bookmaking and poolselling. Being tried, he was convicted and sentenced to pay a fine of $1,000, and to be imprisoned for six months in the city workhouse.

The act on which this information is bottomed, is the following:

"An act to prohibit bookmaking and poolselling at any place other than upon the premises of regular race courses, with emergency clause.

"Be it enacted by the General Assembly of the State of Missouri, as follows:

"Section 1. That any person who keeps any room, shed, tenement, tent, booth or building, or any part thereof, within this state, and who occupies same with any book, instrument or device for the purpose of recording or registering bets or wagers, or selling pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, which is to be made or to take place within or without this state, or any person who records or registers bets or wagers, or sells pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast, which is to be made or take place within or without this state; or, being the owner, lessee or occupant of any room, tenement, shed, tent, booth or building, or any part thereof, knowingly permit the same to be

used or occupied for any of the purposes herein above set forth, or therein keeps, exhibits or employs any device or apparatus for the purpose of recording or registering such bets or wagers or selling of pools as are hereinabove set forth, or becomes the custodian or depository for hire or privilege of any money, property or thing of value which is staked, wagered, or pledged contrary to the provisions of this act, shall be guilty of a misdemeanor, and on conviction shall be punished by imprisonment in the county jail for a term of not less than six months or more than one year, and by a fine of not less than one thousand dollars, or by both such fine and imprisonment: Provided, that nothing in this act shall be so construed as to prohibit or make it unlawful for any person to engage in or register bets and wagers, make books, sell pools or bet upon any trial or contest of speed of a horse, or between horses, on the premises or within the limits or enclosure of a regular race course on which such contest of speed is had, and at and prior to the time thereof: Provided, that it shall be unlawful to make and sell said pools or book-bets to minors; and any person selling said pools and book-bets to any minor shall be deemed guilty of a misdemeanor, and upon conviction, shall be punished by imprisonment in the county jail for a term of not less than three months or more than one year, and by a fine of not less than five hundred dollars.

"Sec. 2. All acts or parts of acts inconsistent or in conflict with the foregoing section are hereby repealed." Laws 1895, p. 150.

The paramount issue presented by the record in this cause, may take the form of the question: Is the act just quoted constitutional?

It will be noted that the act does this:

*First*, it makes it punishable as a misdemeanor for any person who within this state, keeps any room, etc.,

and who occupies the same with any book, instrument or device for the purpose of recording bets, etc., or selling pools upon the result of any trial or contest of skill, speed, etc., of man or beast which is to be made or take place within or without this state.

*Second*, a misdemeanor for any person who thus records such bets, etc., or sells pools, etc., etc., etc.

*Third*, a misdemeanor for any owner, lessee, or occupant of any room, etc., knowingly to permit the same to be used, etc., for any of the purposes aforesaid.

*Fourth*, a misdemeanor for such person to keep in such room, etc., any device, etc., or exhibits, etc., for the purpose of recording bets, etc., etc.

*Fifth*, a misdemeanor for any one to become the custodian of any money, etc., which is staked, wagered, or pledged contrary to the provisions of the act.

The act thus creates five different kinds of misdemeanors, while a proviso in the same section which creates these offenses, prohibits such a construction of the act as to make it unlawful for any person to register bets, make books, sell pools or bet upon any trial or contest of speed of a horse or between horses on the premises or within the limits of inclosure of a regular race course on which such contest of speed is had at and prior to the time thereof. After this proviso, there is a second one making it a misdemeanor to make and sell such pools or book-bets to any minor.

With the exception of the first proviso, the act is substantially identical with the act approved April 1, 1891. Laws of that year, p. 122.

One of the ideas which conspicuously stands forth in our organic law is that provision which declares: "That no *ex post facto* law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or

immunities, can be passed by the general assembly."
Section 15, article 2.   This idea finds emphasis by
repetition in a subsequent article of the constitution,
section 53, article 4, where it said: "The general
assembly shall not pass any local or special law"
[clause 1], * * * "granting to any corporation, asso-
ciation or individual any special or exclusive right,
privilege or immunity" * * .* [clause 27].

Now, doubtless the first constitutional provision
already quoted does not apply to the case before us,
because it relates to an *"irrevocable* grant of special
privileges or immunities," and it has only been quoted
as showing in a general way, the strong *animus* of our
constitution framers against such grants.

But equally doubtless it is that section 53 of article
4 of the constitution as heretofore set forth, does apply
in the present instance, provided the act under review
is a *special law*.   That it is such a law is demonstrated
by the fact that it takes bookmakers, pool sellers and
betmongers as a class, and divides them into two por-
tions, one of which, to wit, that portion which assembles
*"on the premises or within the limits or inclosure of a
regular race course,"* and renders the members of that
portion immune from punishment, while another por-
tion of the same *genus*, bookmaker, pool seller or bet-
monger who pursues his avocation outside or imme-
diately outside of the sacred precincts of "a regular race
course," is doomed for doing the very same things to
fine or imprisonment or both.

Now it is a rule of long established construction in
this state, a rule so well settled that it admits no con-
travention, "that a statute which relates to persons or
things as a class is a general law, while a statute which
relates to particular persons or things of a class is
special."   *State ex rel. v. Tolle*, 71 Mo. 650; *State ex
rel. v. Herrmann*, 75 Mo. 340; *State v. Julow*, 129 Mo.
163.

In the case last cited, it was ruled that while the legislature might legislate in regard to a class of persons, yet that they would not be permitted to take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and thereupon enact different rules for the government of each. This is precisely what has been done in the case at bar; the act bestows protection on all who ply their calling and reap their financial harvests inside the precincts of a regular race course, and inflicts punishment on all who do likewise outside of those artificial boundaries.

Judge Cooley says: "A statute would not be constitutional    *    *    *    which should    *    *    *    select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt.    *    *    *    Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments. Those who make the laws 'are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at plough.' This is a maxim in constitutional law, and by it we may test the authority and binding force of legislative enactments." Cooley, Const. Lim. [6 Ed.], 481–483.

If such an act as that being discussed can stand the test of judicial scrutiny, then the above recited provisions of section 53 aforesaid, relative to the prohibition against granting by special law any special or

exclusive right, privilege or immunity, will have been ordained in vain. Nay, more, if such legislation as that here presented could be sanctioned, then it would be an easy legislative task to provide for the punishment of *robbery, arson, murder,* indeed the whole category of crimes, with a proviso that nothing in this act shall be so construed as to prohibit or make it unlawful for any person "to rob, burn or murder" "on the premises or within the limits or inclosure of a regular race course," etc., etc.

And the fact that the present statute only creates a certain *misdemeanor* and provides punishment therefor and exemption therefrom, does not affect the principle here announced and involved nor enlarge the powers of the legislature in this behalf. In a word, it is quite beyond the power of the legislature to enact even a general law for the punishment of a crime all over the state, and then make that same criminal act non-punishable if perpetrated in certain *favored localities.*

Nor can the act in question be rescued from judicial condemnation by assuming the label of a mere police regulation. The right of the citizen to *constitutional equality,* to the *equal protection of the law,* can not be trampled under foot under the thin disguise of such an assumed regulation. *State v. Julow, supra.*

Nor will it do to say that the proviso aforesaid may be disregarded, and defendant still be punished under the previous portion of the section on which this prosecution is based, since it is obvious that the act was enacted as an *entirety,* and would not have become a law but for the incorporation within it of the obnoxious immunity proviso.

We have been cited to *State v. Burgdoerfer,* 107 Mo. 1, but that case has no bearing on the case in hand, since the act of 1891 contained no such proviso.

Inasmuch as defendant has been convicted under the provisions of an unconstitutional law, we reverse the judgment and order his discharge.    All concur.