In re Flukes.

## In re FLUKES.

### Division Two, June 12, 1900.

1. **Unconstitutional Statute: SECTION 2356: WAGES OF RESIDENT: SUIT IN ANOTHER STATE.** Revised Statutes 1889, sec. 2356, providing that creditors shall not send any note, account, or chose in action out of the State for the purpose of bringing suit to subject to the payment thereof the wages of a resident of this State, is repugnant to the fourteenth amendment of the Federal Constitution, prohibiting a State from depriving any person of property without due process of law, in that the right to sue, which is one of the essential attributes of property, is taken away.

2. ———: ———: ———: ———: **SPECIAL PRIVILEGES TO FOREIGN CITIZENS.** Revised Statutes 1899, sec. 2356, providing that every person or corporation who shall send out of the State any note, bond, account, or chose in action for the purpose of instituting suit to subject to the payment thereof the wages of any resident of this State shall be guilty of a misdemeanor, is repugnant to article 4, sec. 2, of the Federal Constitution, providing that the citizens of each State shall be entitled to all privileges of citizens in the several states, as citizens of foreign states can violate such statute with impunity.

3. ———: ———: ———: ———: **SPECIAL LEGISLATION.** Revised Statutes 1899, sec. 2356, providing that every person, firm, or corporation who shall send out of the State any note, bond, account, or chose in action for the purposes of instituting suit to subject to the payment thereof the wages of any resident of this State shall be guilty of a misdemeanor, is repugnant to Constitution, art. 4, sec. 53, forbidding the Legislature to grant any special or exclusive right, privilege, or immunity, and is therefore void.

In re Flukes.

4. ———: ———: ———: ———: EQUAL PROTECTION. Revised Statutes 1899, sec. 2356, providing that creditors shall not send any note, account, or chose in action out of the State for the purpose of bringing suit to subject to the payment thereof the wages of a resident of this State, and making it a misdemeanor so to do, is repugnant to the fourteenth amendment of the Federal Constitution, prohibiting a State from denying to its citizens the equal protection of the laws, in that it undertakes to arbitrarily separate wage earners from other classes of people, and provides for them a different rule of action.

*Habeas Corpus.*

PRISONER DISCHARGED.

*Thos. B. Harvey* for petitioner.

*P. W. Haberman* for respondent.

SHERWOOD, J.—This is an original proceeding instituted in this court, the object of which is to test the constitutionality of an act passed by the Fortieth General Assembly of this State, which act is the following:

"Every person, or persons, company, corporation or firm, and every agent of any person, persons, company, corporation or firm, who shall take or send, or cause to be taken or sent, out of this State any note, bond, account or chose in action for the purpose of instituting or causing to be instituted any suit thereon in a foreign jurisdiction against a resident of this State, for the purpose of having execution, attachment, garnishment, or other process issued in such suit, or upon a judgment rendered in any such suit, against the wages of a resident of this State, and having such process served upon any person who is, or firm, company or corporation which is subject to the processes of the courts of this State, who is indebted or may become indebted to a resident of this State for wages, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than five hun-

dred dollars, and by imprisonment in the county jail for a period of not less than thirty days nor more than ninety days." [Sec. 2356, Revised Statutes 1899.]

If the act just quoted be unconstitutional, the petitioner's right to be discharged can no longer be questioned in this court, because we now treat (just as it ought always to have been treated), an unconstitutional law as no law at all. [Ex parte Smith, 135 Mo. 223, and cases cited.]

When put in more condensed form, the section on which the prosecution of the petitioner is based, gives forth these results: It subjects any person, etc., to a fine of not less than $100 nor more than $500, and imprisonment in the county jail for not less than thirty nor more than ninety days, who sends out of this State, etc., any note, etc., account, etc., for the purpose of instituting any suit thereon in a foreign jurisdiction against a resident of this State, for the purpose of having execution, attachment, garnishment, etc., issued in such suit, or upon a judgment rendered in such suit, against the wages of a resident of this State, and having such process served upon any corporation subject to the processes of the courts of this State, which is indebted to a resident of this State for wages.

Under the provisions of section 3435, Revised Statutes 1899, no person can be "charged as garnishee on account of wages due from him to a defendant in his employ for the last thirty days' service: Provided, such employee is the head of a family and a resident of this State."

It will thus be seen that under the laws of this State the wages of a single person, an employee and a resident of this State, are not exempt from the process of garnishment here, while under the terms of section 2356, such wages are expressly exempted from the process of garnishment in another State, unless the creditor who attempts to garnish them over there, is willing to incur the punishment of both fine and imprisonment for such a course. This, in effect, gives to single

and unmarried persons, who are residents of, and employees in, this State an exemption in Illinois and other States they are not allowed in this the State of their residence. This results in exempting all those single men residents, etc., whose wages are attempted to be seized under process of a foreign court, while it leaves unexempt those whose wages are garnished under process of our own courts.

Besides, those wage-earners resident of this State, who are married, can only claim in this State an exemption of wages due for the last thirty days' service, while they, and all single wage-earners by the law in question, so far as concerns suits in foreign jurisdictions are exempt without any limit as to their exemption. The effects of the section are more widespread than already related, as will presently appear:

The creditor of any other than a wage-earner may freely send over to Illinois or elsewhere, without fear of arrest or of fine or imprisonment "any note, bond, account or chose in action," and institute such suit as he may please, and obtain any such process as he may desire, and levy and seize on any personal or real or mixed property or debts or wages, and may collect his claim in due and usual course of law, without let or hindrance. Why should such discrimination be made among creditors merely because the debtors in one case receive their remuneration for their labor in wages, and in the other in cash payments day by day, or in a cow, horse, produce or a tract of land?

Again, the creditor, though resident of this State, while he may not institute suit in a foreign jurisdiction in the manner contemplated in section 2356, on a "note, bond, account or chose in action," yet, so soon as he converts his note, etc., into a judgment against his wage-earning debtor, he immediately becomes "law-proof," so far as concerns the section under discussion, and securing a copy of his judgment may

do with it as he will, so far as foreign courts and processes are concerned, even against his co-resident and wage-earning debtor; and can not be punished for so doing.    This instance affords fresh illustration of the discriminations which the questioned law makes in favor of some creditors and against others; those who live side by side in the same town.

Furthermore, the controverted law does more still: not content with its rigorous restrictions and severe punishments on creditors resident of this State, it levels its denunciations against all mankind; it comprehends within its forbidding and globe-encircling enactment all creditors who having a note, bond, account or chose in action within the confines of this State, who dare to send, or cause to be sent, such note, etc., to another State, to institute a suit on it as contemplated in the section under review.    Is not such a far-reaching, world-embracing law beyond the power of the Legislature to make valid?    But the act does not stop even there; it separates wage-earners in a way different from any yet suggested.    Only those wage-earners who are in the employ of "any person who is, or firm, company or corporation which is subject to the processes of the courts of this State," are under the protection of the statute.    If the person, firm, company or corporation is not subject to such processes, then there is no prohibition against the creditor sending his note, etc., into a foreign jurisdiction for collection.

It is a familiar principle in equity jurisprudence that if a resident creditor brings suit in a foreign jurisdiction to seize upon the wages of a resident debtor which are exempt under our laws, a court of equity in this State will interpose by injunction to prevent such result, and we have been cited to the case of Sweeny v. Hunter, 145 Pa. St. 363, where an act was under discussion which forbade a resident creditor of Pennsylvania from suing in another State to collect the wages of a debtor resident in Penn-

sylvania, and imposed as a penalty that in case of such collection, they might be recovered by the debtor in a court in Pennsylvania.

And from the fact that a court of equity would enjoin such collections in a foreign State, it was argued that the law was valid which allowed the debtor to recover the sum of which he had been deprived by the judgment of a foreign court. Conceding the correctness of this ruling, which is certainly opposed by the vigorous dissent of Judge MILLER, concurred in by Judges FIELD, and Harlan in Cole v. Cunningham, 133 U. S. loc. cit. 134, and supported by the opinion of the Supreme Court in the case of Green v. Van Buskirk, 5 Wall. 307 and 7 Wall. 139, still the ruling in Sweeny's case does not cover the present one, because by the provisions of the litigated statute, the act of sending a note out of this State for the purpose, etc., is made a crime.

Under the prohibitions of section 1 of art. 14 of the amendments to the Constitution of the United States, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Our own Constitution contains a provision which declares: "That no person shall be deprived of life, liberty or property without due process of law." [Sec. 30, art. 2.] And also a provision forbidding the Legislature to grant "to any corporation, association or individual any special or exclusive right, privilege or immunity." [Sec. 53, art. 4.]

And section 2 of article 4 of the Constitution of the United States prescribes that: "The citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

As is said by an eminent judge: "The rights thus guaranteed are something more than the mere privileges of

locomotion; the guarantee is the negation of arbitrary power in every form which results in a deprivation of a right." [2 Story on Const. (5 Ed.), sec. 1950.]

"These terms, 'life,' 'liberty,' and 'property,' are representative terms and cover every right to which a member of the body politic is entitled under the law. Within their comprehensive scope are embraced the right of self-defense, freedom of speech, religious and political freedom, exemption from arbitrary arrests, the right to buy and sell as others may—all our liberties—personal, civil, and political; in short, all that makes life worth living; and of none of these liberties can any one be deprived, except by due process of law." [State v. Julow, 129 Mo. 163.]

Now, as elsewhere stated, each of the rights heretofore mentioned, carries with it as its natural and necessary coincident, all that effectuates and renders complete and full, unrestrained enjoyment of that right.

And it has been determined by this court and numerous other courts that no one can be deprived of a vested right of action, without infringing on that provision of our Constitution and that of the United States respecting the deprivation of life, liberty and property without due process of law. [Leete v. State Bank, 115 Mo. 184; s. c., 141 Mo. 584.]

And this court has also determined that it does not lie in the power of the Legislature to make that act a crime which consists in the bare exercise of a simple constitutional right. [State v. Julow, *supra*.]

The right to bring a suit to enforce a contract is part and parcel of that contract, and one of the essential attributes of property of which the owner can not be deprived if the organic law of both State and Nation be obeyed. [People ex rel. v. Otis, 90 N. Y. 48.]

The act under discussion also deprives any creditor as therein mentioned of the equal protection of the laws and abridges the privileges and immunities of citizens of the Uni-

ted States, and denies to such creditors those rights, which section 2 of article 4 of the Constitution of the United States grants to them by declaring that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States.    A citizen of New York or of California could bring just such a suit as the petitioner has brought, and be held wholly blameless.

The act is also obnoxious to the charge that it grants special and exclusive privileges to certain persons or association of persons, and denies the same to others in the same or similar situations.    Judge COOLEY says: "A statute would not be constitutional . . . . . . which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt.   .   .   .   Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which is applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments."    [Cooley, Const. Lim. (6 Ed.), 481-483.]

Finally, section 2356 undertakes to arbitrarily separate natural classes of people and to provide different rules of action for each of the dissevered fractions, thus unwarrantably formed into a class of its own.    [State v. Julow, *supra.*]

The premises considered, we declare the law unconstitutional on the various grounds hereinbefore set forth, and hence discharge the prisoner.    All concur.