GEORGE A. C. WOOLLEY and EDWIN S. FISH, Appellants, v. DAVID HENRY MEARS and JOHN D. WOODRUFF, Executors Under Will of MARION V. MEARS, and DAVID H. MEARS.

Division One, March 1, 1910.

1. **REAL ESTATE AGENT: Written Contract: Unconstitutional Statute.** The Act of March 28, 1903, Laws 1903, p. 161, providing that any person who shall offer for sale any real property without the written authority of the owner, shall be deemed guilty of a misdemeanor, is unconstitutional and void, for the reason it impairs and infringes upon the rights and liberty of all persons to choose whatever lawful occupation they may choose to follow. And being void, it is no defense to the suit of a real estate agent for the recovery of commissions earned by him in selling defendant's land.

2. ———: ———: ———: **Special Law.** Said statute is also unconstitutional as a special law regulating labor or trade, because it applies only to cities of three hundred thousand inhabitants or more, when, if otherwise valid, there is no good reason why it should not be made applicable to all other cities and portions of the State.

3. **Constitutional Question: Timely Raised.** Where the suit originated before a justice of the peace, where no pleadings are required, and on a retrial *de novo* in the circuit court the court gave an instruction for defendant in the language of the statute, which barred a recovery by plaintiff, the constitutionality of the statute is timely raised by objecting and excepting to the instruction when given and by assailing said statute in the motion for a new trial.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald*, Judge.

REVERSED AND REMANDED.

*Lubke & Lubke* for appellants.

(1) A real estate broker, who has found a purchaser for his principal's property with whom the principal makes a contract to sell the property and who is ready, willing and able to carry out the same, is entitled to reasonable compensation for his services, in the event no price has been agreed on. Gelatt v. Ridge, 117 Mo. 553; Grether v. McCormick, 79 Mo. App. 325; Finley v. Dyer, 79 Mo. App. 604; Lipscomb v. Russ, 81 Mo. App. 53; Sallee v. McMurry, 113 Mo. App. 253. (2) The act of the Legislature approved March 28, 1903, Laws 1903, p. 161, making it a misdemeanor in cities of three hundred thousand inhabitants or more to offer for sale any real property without the written authority of the owner of the property or of his attorney in fact, or of a person who has made a written contract for the purchase of such property, and prescribing the punishment therefor, is void, because in violation (a) of the Constitution of the United States, art. 1, sec. 10, and of sec. 1 of the Fourteenth Amendment thereto; and (b) of the Constitution of

this State, art. 2, sec. 15, and art. 4, sec. 53.   Fisher Co. v. Woods, 187 N. Y. 90; Grossman v. Caminez, 79 N. Y. App. Div. 15; Cody v. Dempsey, 86 N. Y. App. Div. 335; State v. Walsh, 136 Mo. 400; State v. Thomas, 138 Mo. 100; State v. Julow, 129 Mo. 163; In re Flukes, 157 Mo. 125; State ex rel. v. Turner, 210 Mo. 77; State ex rel. v. Messerly, 198 Mo. 351; Henderson v. Koenig, 168 Mo. 375; State v. Buchart, 144 Mo. 83; State v. Grannemann, 132 Mo. 326; Murnane v. St. Louis, 123 Mo. 479; State ex rel. v. Herrmann, 75 Mo. 340; State ex rel. v. County Court, 89 Mo. 237.   (3) Even though this Act of 1903 be held valid, plaintiffs were nevertheless entitled to recover against the defendants, because defendants ratified plaintiffs' acts and received the benefit of their services.   Trust Co. v. Niggemann, 119 Mo. App. 56; Tooker v. Duckworth, 107 Mo. App. 231; Smyth v. Hanson, 61 Mo. App. 285; Prince v. Baptist Church, 20 Mo. App. 332; Prietto v. Lewis, 11 Mo. App. 600; Whitely v. Terry, 83 N. Y. App. Div. 197.

*W. H. Allen* for respondents.

(1) A constitutional question must be timely raised, in some appropriate manner; it is too late to raise it in the motion for a new trial, or in arrest. Lohmeyer v. Cordage, 214 Mo. 685; State v. Gamma, 215 Mo. 100; Hartzler v. Railroad, 218 Mo. 562; State v. Boehler, 220 Mo. 4.   And it is too late to raise it for the first time in the circuit court, where the case comes there on appeal from a justice of the peace. In re Estate of Strom, 213 Mo. 1.   (2) Under the act approved March 28, 1903, Laws 1903, p. 161, a real estate agent who procures a purchaser for real estate placed in his hands for sale, in violation of the terms of the act, cannot recover a commission from the owner for such sale.   Rothwell v. Gibson, 121 Mo. App. 279; Filey v. Handley, 121 Mo. App. 358; Charles v. Arthur, 84 N. Y. S. 284; Kronberger v. Quinn, 86 N. Y.

S. 139; Downing v. Ringer, 7 Mo. 585; Amusement Co. v. Park Co., 192 Mo. 404; Bick v. Seal, 45 Mo. App. 475; Tandy v. Commission Co., 113 Mo. App. 409. (3) There is no such thing in law as the ratification of an act or transaction, which at the time of its performance was prohibited by statute. The parties cannot legalize that which the law has declared illegal. Even if a new contract be made, yet if it grows immediately out of the illegal transaction, it is as much tainted by it as the original contract. Bick v. Seal, 45 Mo. App. 480; Kronberger v. Quinn, 86 N. Y. S. 139; Buckingham v. Fitch, 18 Mo. App. 91; Woolfolk v. Duncan, 80 Mo. App. 421; Amusement Co. v. Park Co., 192 Mo. 404; Tandy v. Commission Co., 113 Mo. App. 409. (4) A general allegation that a statute is unconstitutional is not sufficient. The particular article and section of the State or Federal Constitution which it violates must be specifically and distinctly pointed out, and none other can be considered. Lohmeyer v. Cordage Co., 214 Mo. 688; Ash v. Independence, 169 Mo. 77; State to use v. Lumber Co., 170 Mo. 7; Hardin v. Carthage, 171 Mo. 442. (5) Every presumption is to be indulged in favor of the validity of an act; and courts will not declare a statute to be unconstitutional unless its violation of the Constitution is so manifest as to leave no room for reasonable doubt. State ex rel. v. Fort, 210 Mo. 526; State v. Tower, 185 Mo. 102; Ex parte Loring, 178 Mo. 194; State v. Gregory, 170 Mo. 598; State ex rel. v. Yancey, 123 Mo. 402. (6) The above-mentioned act of the Legislature approved March 28, 1903, Laws 1903, p. 161, is not unconstitutional, as being violative of the Constitution of Missouri, art. 4, sec. 53. State ex rel. v. Wofford, 121 Mo. 69; Ex parte Lucas, 160 Mo. 235; Owen v. Bear, 154 Mo. 415; State v. Tower, 185 Mo. 87; State v. Layton, 160 Mo. 498; State v. Haynes, 88 Mo. 344; Haynes v. Mo., 120 U. S. 68; Kansas City v. Segmiller, 151 Mo. 189; State v. Sibley, 131 Mo.

519; State v. Yancey, 123 Mo. 391; Dunne v. Kansas City, 131 Mo. 1.

WOODSON, J.—This suit was begun before a justice of the peace in the city of St. Louis, to recover the sum of $175, commissions claimed to be due the plaintiffs from the defendants for procuring a purchaser for real estate in the city of St. Louis, belonging to Marion V. Mears, one of the defendants. The trial before the justice resulted in a judgment in favor of the defendants, from which plaintiffs appealed to the circuit court. Shortly after the appeal was perfected, Marion V. Mears died, and the cause was duly revived as to her against her executors. A trial *de novo* was had in the circuit court, which also resulted in a judgment in favor of the defendants. From this judgment plaintiffs duly appealed the cause to this court.

The evidence showed that plaintiffs were real estate agents doing business in the city of St. Louis, and that some two years prior to the date of the trial they solicited defendants to let them undertake to sell said real estate, which was located in said city, for the sum of $7000 net. But being unable to sell said property for that sum, they, without authority, made a contract to sell the same to F. H. Kenthan for the price of $6800, and accepted $100 earnest money from him to bind the bargain, subject, however, to the approval of defendants. Upon the submission of this contract to defendants for approval, they declined to accept it, but they again agreed to take $7000 for the property; and at the same time the contract of sale before mentioned was amended by changing the figures therein stated, the amount of the purchase, $6800, to $7000. The contract in this changed condition was presented to the purchaser, Kenthan, who assented to the change, and, on April 17, 1905, indorsed on the back thereof his acceptance of the same.

The evidence for plaintiffs tended to show that during the time the sale to Kenthan was being negotiated, no mention was made by plaintiffs or defendants as to the compensation to be paid to the former by the latter for their services performed in the premises. While upon the other hand, the evidence for defendants tended to show that they were to receive $7000 net as the purchase price of the property. The usual compensation paid to real estate agents for their services for making sales of this class of property in that city was, at the time mentioned, two and one-half per cent of the purchase price.

It was admitted that the purchaser was ready, able and willing to carry out the terms of the contract, but the vendors declined to convey the property to him. Also that plaintiffs had no written authority from defendants, nor from any one authorized to act for them, to sell said property.

The foregoing was substantially all of the evidence introduced at the trial in the circuit court.

At the conclusion of the introduction of all the evidence in the cause, the defendants asked and the court gave the following declarations of law:

"1. The court declares the law to be that, under the pleadings and evidence in this case, plaintiffs cannot recover.

"2. The court declares the law to be that unless the plaintiffs herein had written authority of the owner of the real property in question, or of his attorney-in-fact appointed in writing, or of a person who has made a written contract for the purchase of such property, with the owner thereof, to offer said property for sale, plaintiffs cannot recover commissions for procuring a purchaser for said property, and judgment herein must be for the defendants."

To which action of the court in giving said declarations, and each of them, the plaintiffs duly objected and saved their exceptions.

The court thereupon in passing upon the case made and filed the following memorandum of its decision:

"The plaintiffs herein having failed to procure the authority which the statute contemplates to offer for sale the defendants' real estate, they cannot recover the commission which the evidence in this case shows them to have earned. Judgment for the defendants."

The motion for a new trial assigned, among others, the following reasons therefor:

"Third. Because the court erred in giving improper and illegal instructions asked by the defendant.

"Fourth. Because the finding and judgment of the court is against the evidence and weight thereof.

"Fifth. Because the finding of the court is against the law and the evidence, and should have been in favor of the plaintiffs and against the defendants.

"Sixth. Because the ruling of the court that the plaintiffs were not entitled to recover in this case because they were not authorized in writing by the defendants to sell their real estate, pursuant to an act of the Legislature, approved March 28, 1903, and found in Session Acts of 1903, at page 161, is erroneous, because said act is illegal and void because in violation of the Constitution of the United States, and the Constitution of the State of Missouri, and because said act is particularly in violation of section 32 of article 4 of the Constitution of the State of Missouri, prohibiting special and local laws."

The assignments of errors present substantially the same errors complained of by plaintiffs in the motion for a new trial; and for this reason it will be unnecessary to restate them here.

I.   The chief proposition presented by this record for determination involves the constitutionality of sec-

tion 1 of an act of the Legislature, approved March 28, 1903, Laws 1903, p. 161, which reads as follows:

"Section 1. In cities of three hundred thousand inhabitants or more, any person who shall offer for sale any real property without the written authority of the owner of such property, or of his attorney-in-fact, appointed in writing, or of a person who has made a written contract for the purchase of such property, with the owner thereof, shall be deemed guilty of a misdemeanor and fined in a sum of not less than ten dollars nor more than three hundred dollars."

It will be observed that this act makes it a misdemeanor for any one to offer for sale any real property without the written authority of the owner thereof or of his attorney-in-fact, or of a person who has made a written contract for the purchase of such property, and prescribes a penalty for its violation in a sum of not less than ten dollars nor more than three hundred dollars.

Counsel for appellants insist that said section of said Act of 1903 is violative of section 15 of article 2 and section 53 of article 4 of the Constitution of Missouri. The foregoing provisions of the Constitution prohibit the Legislature from enacting any law impairing the obligations of a contract, and from making any irrevocable grant of special privilege to any one; and forbid the passage of any special or local law when a general law may be made applicable, or the enacting of any special law regulating labor, trade, mining or manufacturing. Counsel for appellants insist that said act is violative of all of said constitutional provisions, and cites in support of that insistence the cases of Frank L. Fisher Co. v. Woods, 187 N. Y. 90, and Grossman v. Caminez, 79 N. Y. App. Div. 15.

The statute under consideration in the New York cases was identical with the act involved in the case at bar, except there the statute applies to cities of the

first and second class instead of cities of three hundred thousand inhabitants or more, as the act in question does. See Laws of New York, 1901, p. 312.

The New York Court of Appeals in the former case, in the discussion of this question, used the following language:

"The only object and purpose apparent is to shield the landowner from being compelled to pay for services rendered, unless the person rendering them can show written authority therefor. In the real estate business the owner has a shield from unjust claims, that does not exist with reference to many other professions, trades or occupations. The agent is not entitled to his commissions until he brings to the owner a purchaser and their minds meet upon the terms. The owner can, therefore, always refuse to receive or enter upon negotiations with a person introduced by a real estate broker who has not been authorized by him. If, therefore, the Legislature, in the exercise of its police powers, may, by this act, lawfully make it a misdemeanor for a person to render services to an owner in procuring a purchaser without his written authority, it may also provide that a lawyer should be guilty of a misdemeanor for drawing a contract for a client, or for rendering him any other service, without having authority therefor in writing. It would also be competent to place like restrictions upon every employee in every trade and occupation. It is difficult to see how there could be any limitation to the power of the Legislature in this direction. To our minds this is going too far. It is an arbitrary infringement upon the liberty and rights of all persons who choose to engage in such occupation. Had the act been for the purpose of regulating the business of brokerage, or a statute of frauds, a different question would have been presented; but it is neither. It relates, as we have seen, to any and every person, and

226 Sup—4

instead of making the oral contract void, it makes the person employed guilty of a misdemeanor and punishable as a criminal. Undoubtedly, the power of the Legislature to enact what shall amount to a crime is exceedingly large, but, as was said by PECKHAM, J., in People v. Gillson, supra: 'That there is a limit even to that power under our Constitution, we entertain no doubt, and we think that limit. has been reached and passed in the act under review.' So we conclude with reference to this act.''

And in Grossman v. Caminez, supra, the court in holding this same act invalid, in discussing the power of the Legislature, said: ''The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, nor impose unusual and unnecessary restrictions upon lawful occupations.''

The reasons given by the New York courts for holding said statute to be unconstitutional and void seems to us to be sound and unanswerable; and it would be a useless waste of time and labor to discuss the question further.

We, therefore, hold that said Act of 1903 is invalid, for the reason that it impairs and infringes upon the rights and liberty of all persons to choose whatever lawful occupation they may deem proper to follow:

II.   We are also of the opinion that said act is violative of section 53 of article 4 of the Constitution, for the reason that it is a special law regulating labor, or trade; and because, by its express terms, it applies only to cities of three hundred thousand inhabitants or more, when, if otherwise valid, there is no good reason which could be assigned why it should not be made applicable to all cities and other portions of the State. If there is any good reason for enacting such a statute for cities of three hundred thousand or more inhabitants, then the very same reason would be a valid reason for making it applicable to all cities of

less than three hundred thousand. Statutes of similar operation in scope have been considered by this court many times.

In State v. Walsh, 136 Mo. 1. c. 405, this court, in discussing the Act of 1895, punishing bookmaking when carried on outside of the enclosure of a regular race course, but not when conducted inside of such a course, said: "Now, it is a rule of long established construction in this State, a rule so well settled that it admits no contravention, 'that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special.' [State ex rel. v. Tolle, 71 Mo. 650; State ex rel. v. Herrmann, 75 Mo. 340; State v. Julow, 129 Mo. 163.] In the case last cited, it was ruled that while the Legislature might legislate in regard to a class of persons, yet that they would not be permitted to take what might be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and thereupon enact different rules for the government of each. This is precisely what has been done in the case at bar; the act bestows protection on all who ply their calling and reap their financial harvests inside the precincts of a regular race course, and inflicts punishment on all who do likewise outside of those artificial boundaries."

In State v. Thomas, 138 Mo. 100, the Act of 1891, prohibiting the sale of bets on the result of any contest which was to take place outside of the State and prescribing a punishment therefor, came before this court for consideration. It was there contended that said act was unconstitutional, for the reason that by implication bets made upon such contests within the State were not prohibited and made punishable thereby, while all bets made upon such contests without this State were, by express terms, made punishable. In holding that act unconstitutional, this court, on page

100, said: "Is then the Act of 1891 in accord with the Constitution? It is true that act does not in terms designate as exempt those gamblers or other offenders who are not embraced within the penalties it prescribes, but nevertheless it does exempt them as effectually as though they, i. e., those who gamble on results to occur in this State, had been expressly named and exempted. What a statute will imply is as much part and parcel of legislative enactment as though set forth in terms. [State ex rel. v. Buchanan Co., 108 Mo. 1. c. 242; Sutherland, Stat. Construc., sec. 334, and cases cited.] And 'where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others; there is then a natural inference that its application is not intended to be general.' [Sutherland, Stat. Construc., sec. 327.] And that act is a special law because it separates offenders who gamble on events to occur outside of this State, or who sell to minors pools based on such results, from those who do the very same things as to events occurring within this State; prescribes punishment for the former, and provides protection for the latter, and this as effectually as though such protection were granted in terms. The act thus divides a natural class into two portions, making two classes out of one, and thus in effect arbitrarily enacts different rules for the government of each. [State v. Julow, 129 Mo. 163; State v. Walsh, supra.]" See also State v. Julow, 129 Mo. 163; In re Flukes, 157 Mo. 125; State ex rel. v. Turner, 210 Mo. 77; State ex rel. v. Standard Oil Co., 218 Mo. 1.

III. Counsel for respondents insists that this court should not consider the constitutional questions before stated, for the reason that they were not timely raised and presented by counsel for appellants.

This insistence is without merit, for the reason that this suit was begun before a justice of the peace, where no pleadings are required; and the trial court

based the declarations of law upon said Act of 1903, and at the time appellant objected to the court giving said instructions and to the judgment of the court because said act was unconstitutional. These objections were overruled, and exceptions were duly saved. According to the uniform rulings of this court, appellants were timely in raising said constitutional questions. [Lohmeyer v. Cordage Co., 214 Mo. 685.]

We, are, therefore, of the opinion that the judgment should be reversed and the cause remanded; and it is so ordered. All concur.