Berger, In re.

# CONSTITUTIONAL LAW—WORK AND LABOR.

[Hamilton (1st) Circuit Court, June 1, 1912.]

Smith, Swing and Jones, JJ.

## IN RE SAUL BERGER.

**Act Preventing Discharge of Employes for Membership in Labor Unions Held Unconstitutional.**

The proscription of Gen. Code 12943 against employer's preventing employes from joining or belonging to labor organizations, etc., is an unwarranted interference with the right to contract for labor and fix conditions and terms thereof, infringing upon constitutional rights.

DEMURRER to answer.

*Morse & Tuttle,* for petitioner.
*Nicholas Klein,* for United Shoe Workers of America.

## SMITH, P. J.

Upon January 24, the petitioner was arrested upon an affidavit and warrant charging that on December 2, 1911, he, being an agent and employe of the Roth Shoe Manufacturing Company, did unlawfully coerce and discharge one, Schroeder, from the employment of the. said company, because said Schroeder was a member of the United Shoe Workers of America, a lawful labor organization.

To the answer of William H. Jackson, chief of police of the city of Cincinnati, who by virtue of said warrant held the petitioner in custody, a demurrer was filed, setting up therein that Gen. Code 12943, the statute under which the prosecution of the petitioner was had, is unconstitutional as being in contravention of the fifth and fourteenth amendments to the constitution of the United States, and Art. 1, Sec. 1, of the constitution of Ohio.

Gen. Code 12943 reads as follows:

"Whoever, being a member of a firm, or agent, officer or employe of a company, corporation or person, prevents employes from forming, joining or belonging to a lawful labor

organization, or coerces or attempts to coerce employes by discharging or threatening to discharge them from their employ, or the employ of a firm, company or corporation because of their connection with such labor organization, shall be fined not more than one hundred dollars or imprisoned not more than six months, or both.''

Sec. 1 of the fourteenth amendment of the constitution of the United States provides that ''no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.''

Art. I, Sec. 1, of the constitution of Ohio, declares:

''All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and seeking and obtaining happiness and safety.''

It was said by the court in the case of *People* v. *Marcus*, 185 N. Y. 257 [77 N. E. Rep. 1073; 7 L. R. A. (N. S.) 282; 113 Am. St. Rep. 902; 7 Ann. Cas. 118]:

''The free and untrammeled right to contract is a part of the liberty guaranteed to every citizen by the federal and state constitutions. Personal liberty is always subject to restraint when its exercise affects the safety, health or moral and general welfare of the public, but subject to such restraint an employer and employe may make and enforce such contract relating to labor as they may agree upon.''

The offense charged against the petitioner in effect is, that he, being an agent of the shoe company, did unlawfully coerce and discharge one, Schroeder, from its service because of his membership in a labor organization.

We do not think that the legislature can make such an act as is described in Gen. Code 12943 a criminal offense in the face of the constitutional guaranties above cited.

''The right to employ labor and make contracts in relation

Berger, In re.

thereto upon such terms as may be mutually agreed upon is in-
cident to the right of enjoying liberty and of acquiring, possess-
ing and protecting property guaranteed by the constitution.
An essential element of the right to enter into a contract of
employment is the right of the parties to fix the terms of the
employment, and of either party to terminate the employment
at pleasure, when it is not otherwise agreed upon. When the
constitution declares that every person has an inalienable right
to liberty and to acquire, possess and protect property, it guar-
antees to him the right to make and enforce all proper con-
tracts, and to employ in carrying on his business such persons
and such lawful means as he may choose, free from all restraints
except such as are necessary for the common welfare.''
*State* v. *Bateman,* 10 Dec. 68 (7 N. P. 487); *People* v. *Marcus,*
·*supra; Adair* v. *United States,* 208 U. S. 161 [28 Sup. Ct. Rep.
277; 52 L. Ed. 436], and cases cited therein; *State* v. *Julow,*
129 Mo. 163 [31 S. W. Rep. 781; 29 L. R. A. 257; 50 Am. St.
Rep. 443]; *New York, C. & St. L. Ry.* v. *Schafer,* 65 Ohio St.
420 [62 N. E. Rep. 1036; 62 L. R. A. 931; 87 Am. St. Rep. 628].

Upon an examination of the above authorities, together
with numerous others cited by counsel, we can reach but one
conclusion: that the great weight of authority is that statutes
characteristic of the one in question are unconstitutional and
void, and we so hold in this case.

The demurrer to the answer will be sustained and the peti-
tioner discharged.

**Swing, J.,** concurs.

**JONES, J.,** dissenting.

The majority opinion is doubtless in accord with the deci-
sions of the highest courts of many of our sister states upon
statutes similar and in some instances in the precise words of
the section under consideration here.

Such laws are passed in the exercise of the police power
inherent in every organized government. This power has been
defined by Judge Cooley, Const. Lim. Chap. 16, p. 704, as
follows:

Hamilton County.

"The police power of a state, in a comprehensive sense, embraces its whole system of internal regulation by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens those rules of good manners and good neighborhood, which are calculated to prevent a conflict of rights and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others."

Blackstone's definition is:

"The due regulation and domestic order of the kingdom, whereby the inhabitants of a state, like members of a well governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious and inoffensive in their respective stations."

I quote the following from the opinion in this case written by Smith, P. J.:

"When the constitution declares that every person has an inalienable right to liberty, and to acquire, possess and protect property, it guarantees to him the right to make and enforce all proper contracts and to employ in carrying on his business such persons and such lawful means as he may choose free from all restraints, except such as are necessary for the common welfare."

Here, in the majority opinion, is a clear recognition of the power of the state to place limitations upon a man's control of his business or his property, whenever the good of society so demands.

But who is to determine whether a proposed legislative act is necessary for the common welfare? Manifestly the legislative or governing body of the state has a large discretion in such matters and it is only where a court is clearly satisfied that this discretion has been abused and arbitrarily exercised without reasonable or probable cause therefor that it will be justified in overruling the lawmaking body and declaring its act a nullity.

Berger, In re.

The question for the legislature when such laws are proposed for passage ·is not alone whether they interfere with personal liberty or private property, but whether the conditions such legislation is designed to remedy make much interference necessary and justifiable, having in view the rules of·"good manners, good neighborhood" and the general comfort, safety and welfare.  In other words, whether the protection afforded and benefits bestowed by the proposed measure are commensurate with or outweigh the checks and restraints imposed upon freedom of action with respect to person or property.

Counsel for relator bases his argument against the validity of the law upon the decisions of other states above mentioned, and my associates also rely on such precedents in the conclusion to which they have come.  The Supreme Court of Ohio has not passed upon any law such as the one before us, nor has any circuit court of our state.

From the nature of the law and its subject-matter, I do not think that controlling weight should be given to decisions rendered upon like statutes in other states where, and at a time when conditions may have been far different from those which prevail here and now.  The police power, as has been pointed out, is or should be exerted to meet conditions existing in the territory where its regulations are to operate and the validity of a law expressive of this power must depend upon those conditions, and not upon conditions and circumstances of a bygone age or a distant state.

In deciding the recent case of *Borgnis* v. *Falk Co.* 133 N. W. Rep. 209 (Wis.), wherein the constitutionality of the Workmen's Compensation law was upheld, Chief Justice Winslow of the supreme court of Wisconsin used this language:

"Constitutional commands and prohibitions, either distinctly laid down in express words or necessarily implied from general words, must be obeyed, and implicitly obeyed, so long as they remain unamended or unrepealed.  Any other course on the part of either legislator or judge constitutes violation of his oath of office; but when there is no such express command or prohibition, but only general language or a general policy

Hamilton County.

drawn from the four corners of the instrument, what shall be said about this? By what standards is this general language or general policy to be interpreted and applied to present day people and conditions? When an eighteenth century constitution forms the charter of liberty of a twentieth century government, must its general provisions be construed and interpreted by an eighteenth century mind in the light of eighteenth century conditions and ideals? Clearly not. This were to command the race to halt in its progress, to stretch the state upon a veritable bed of Procrustes.

"Where there is no express command or prohibition, but only general language or policy to be considered, the conditions prevailing at the time of its adoption must have their due weight; but the changed social, economic, and governmental conditions and ideals of the time, as well as the problems which the changes have produced, must also logically enter into the consideration, and become influential factors in the settlement of problems of construction and interpretation. These general propositions are here laid down, not because they are considered either new or in serious controversy, but because they are believed to be peculiarly applicable to a case like the present, where a law which is framed to meet new economic conditions and difficulties resulting therefrom is attacked principally because it is believed to offend against constitutional guaranties or prohibitions couched in general terms, or supposed general policies drawn from the whole body of the instrument."

Two of the associate judges of the Wisconsin court were impelled by the language of the chief justice above quoted to write separate concurring opinions, fearing that the impression might go out that court held the constitution to be changeable. But to me the meaning is clear and the apprehension on the part of the associate justices of danger in the language quoted is on fanciful rather than on real ground.

It is not at all a new doctrine that he so well expresses, but one that, with much new legislation to meet changed and changing conditions, must necessarily be more often cited and applied.

Berger, In re.

For example, when the pioneers of Ohio were living in log cabins and there were no other buildings in the state, a law requiring fire escapes or smoke consumption, if passed, might well have been declared invalid, but would that decision upon that law at that time be a barrier to such legislation today?

The purpose of the law under which relator was arrested is to prevent an employer from coercing an employe by discharging or threatening to discharge him because he is a member of a lawful labor organization.

The purpose and effect of such action on the part of employers would be to break up the labor organization; and to prevent such result and to protect the employe from intimidation and coercion and in the enjoyment of freedom of thought and action, the law was obviously enacted.

It is to be presumed that the legislature looked upon lawful labor organizations as proper and wholesome agencies and as entitled to the protection of the law from enforced disorganization and disintegration. The fact that an employe belongs to an organization of a lawful nature can not affect injuriously his efficiency or value to his employer. As it can not make his labor less skillful or productive, his discharge on that ground must be for some ulterior purpose and not primarily in furtherance of business interests. Unless the discharge of an employe is actuated by a desire for better service it is difficult to see how a prevention of such discharge can be an intrenchment upon property rights and, therefore, how any constitutional question is involved.

Assuming, however, that the law does impose restrictions, the legislature, in its wisdom, has said that they are necessary restrictions and that an employe must not be coerced by such threats even if there is an interference by the operation of law with one's full and absolute control of his property.

With the wisdom or expediency of a law, courts have nothing to do.

Labor organizations, as is generally known, have exerted a potent influence in recent years upon legislation. Many laws have been passed in state and Nation affording protection to

Hamilton County.

and improving conditions of workingmen, women and children. Labor organizations have hastened such measures and have, at least, taken a large part in shaping and enacting them.

It is conceivable that our legislature might well consider such organizations entitled to protection. In its discretion it has so declared and its action should not be nullified by judicial decree until clearly shown to be in contravention of the constitution.

I am not clear that the law is unconstitutional, and hence do not concur in the opinion heretofore announced by my associates.