Tiley *et al. v.* Grenada Building & Loan Ass'n.*

In Banc. June 15, 1926.)

[109 So. 10. No. 25480.]

1. Statutes.
   Laws 1912, chapter 167, as amended by Laws 1914, chapter 216 (Hemingway's Code, sections 3914-3924), authorizing building and loan associations, *held* not violative of Const. 1890, section 90, as being a special act discriminating between borrowers, who may or may not be stockholders in the association.

2. Building and Loan Associations.
   Contract for monthly payments to building and loan association *held* not usurious as against borrower, in view of reduction of interest rate because of sharing in profits by way of dividends.

3. Building and Loan Associations.
   Hemingway's Code, sections 5531-5533, authorizing installment loans by others than building and loan associations, though valid, *held* not to repeal Laws 1912, chapter 167, as amended by Laws 1914, chapter 216 (Hemingway's Code, sections 3914-3924), authorizing building and loan associations.
   Ethridge, J., dissenting.

---

*Corpus Juris-Cyc References: Building and Loan Associations, 9CJ, p. 924, n. 75; p. 973, n. 50; Statutes, 36Cyc, p. 999, n. 14. Applicability of usury laws to building & loan assn's, see 4 R. C. L., p. 373; 1 R. C. L., Supp. p. 1127.

APPEAL from circuit court of Sunflower county.

HON. S. F. DAVIS, Judge.

Suit by the Grenada Building & Loan Association against E. H. Tiley and another. Judgment for plaintiff, and defendants appeal. Affirmed.

*Everett & Forman,* for appellant.

I. We contend that section 9, chapter 216, Laws of 1914, which is section 3922, Hemingway's Code, in violative of paragraph D of section 90, Constitution of Mississippi.

On March 16, 1912, chapter 167, Laws of 1912, was passed providing for the organization, regulation and supervision of domestic and foreign building and loan associations, section 2 thereof defining the term building and loan association and specifying how it should apply. This act was declared unconstitutional in *Halsell* v. *Union Ins. Co.,* 105 Miss. 268. On suggestion of error this opinion was reversed and the court held the 1912 law constitutional. Afterwards sections 2 and 9 of the Act of 1912 were amended by chapter 216, Laws of 1914.

II. We contend that if chapter 167, Laws of 1912, was constitutional the enactment of chapter 216, Laws of 1914, clearly makes section 2 and section 9, chapter 87, Hemingway's Code, unconstitutional.

Section 90 in the Constitution provides: "The legislature shall not pass private or special laws in any of the following enumerated cases but such matters shall be provided for only by general laws. Par. D regulating the rate of interest on money."

It will be seen that by section 9, chapter 167, Laws of 1912, building and loan associations are authorized to lend money to stockholders at ten per cent per annum, but no provision is made for its members and stockholders who share in its profits to borrow money on the monthly installment plan, repaying it by monthly plans

and the associations are authorized to make altogether a different contract with applicants or borrowers, who are not members and who do not participate in the profits, by authorizing them to lend money to that class of persons at ten per cent per annum, payable in monthly installments, which is a much higher per cent of interest when paid in monthly installments than when paid annually.

In order that a statute of this character may be constitutional there must exist some intrinsic reason why the law should operate upon some and not upon all, or should affect some differently from others; and this classification must be based upon differences which are either defined by the Constitution or are natural or intrinsic and should suggest a reason that may reasonably be held to justify the diversity in the legislation. The class must be characterized by some substantial qualities or attributes which render such legislation necessary for that class. *Bloss* v. *Louis,* 109 Cal. 493; *Crause* v. *Durbrow,* 127 Cal. 681; *White* v. *Santa-Cruz,* 89 Fed. 619; *Tombs* v. *Board of Supervisors of Washington County,* 106 So. 273; 25 R. C. L., p. 815.

If a bank or an individual in Mississippi, lending money, desires to lend it on a monthly payment plan, as building and loan associations are authorized to do it, must lend the same at five per cent per annum. See section 553, Hemingway's Code. If individuals, banks, and other corporations are prohibited by the general law from lending money at ten per cent on the monthly payment plan, then how can this court hold that the statute authorizing building and loan associations to lend money at ten per cent payable monthly, is anything but a special statute and, therefore, unconstitutional?

Again, the statute here complained of not only particularizes building and loan associations as a single class, authorized to exercise this special privilege, but it goes further and classifies those to whom it may lend its money and authorizes the association to lend to one

class of borrowers as follows: *"Members who are stockholders and who participate in the profits of the association at a rate of interest not to exceed ten per cent per annum,"* and to another class of borrowers, to-wit: *"Borrowers who are not members and who do not participate in the profits, at a rate of interest not to exceed ten per cent per annum, payable in monthly installments."* So we have a statute conferring a special privilege; that is, to lend money at ten per cent per annum to a particular class and a statute which gives this favored association the right to charge the man on the inside who makes a profit ten per cent per annum, and the man on the outside who makes no profit and who is most in need of money pays ten per cent per annum, payable monthly.

Section 2075, Hemingway's Code, a general statute, fixes the legal rate of interest at six per cent and the contractual rate at eight per cent per annum, and imposes a penalty, the forfeiture of all interest, if a greater rate be charged. The building and loan statute here in question is in conflict with section 2075. The building and loan contract here in question also conflicts with section 2079, Hemingway's Code.

Again, under section 5531, Hemingway's Code, individuals, banks and corporations other than building and loan associations, desiring to lend money on a monthly payment basis must lend it at five per cent per annum or less; but the preferred class, building and loans, may lend on same terms and conditions at ten per cent per annum, on the same monthly payment basis. That leads to a chaotic condition in the courts administering these separate laws. When default is made by the borrowers, one from a building and loan association and one from a bank or life insurance company and both are sued, we have the same court enforcing a ten per cent contract for one and a five per cent contract for another. And if they both be ten per cent contracts, not only does that same court enforce the one and decline to enforce the other, but it must enforce the one with the building and loan association and actually impose a forfeit of all

of the interest of the other because this unfortunate one is not named "Building & Loan Association," although its contract is identically the same.

Therefore, it is our contention that chapter 216, Laws of 1914, under which the contract in question was made, is clearly violative of Par. D, section 90, Constitution of Mississippi, in that it authorizes building and loan associations to lend money to its stockholders at one rate of interest and to non-stockholders at another; and, furthermore, the distinction made in the *Halsell case, supra,* construing the act of 1912 is eliminated by the amendment in the acts of 1914, and the principle announced in the Halsell case no longer exists, since the amendment was made to the act of 1912.

III.   The contract sued on in this case is an unlawful one and cannot be enforced in the courts of this state for the reason that section 9, chapter 216, Laws of 1914, which amends section 9, chapter 167, Laws of 1912 (sec. 3922, Hemingway's Code) was repealed by chapter 136, Laws of 1916.   According to legal construction and operation, "Where two legislative acts are repugnant to, or in conflict with each other, the one last passed, being the latest expression of the legislative will, must govern although it contains no repealing clause."   See 36 Cyc., p. 1073; *So. R. R. Co.* v. *Jackson,* 38 Miss. 334; *Payton* v. *Cabaness,* 44 Miss. 808; *Gibbons* v. *Brittenum,* 56 Miss. 232.

Chapter 136, Laws of 1916, however, by section 4 thereof, expressly provides that: "all laws or parts of laws in conflict with this act be and the same are hereby repealed."   Certainly, it will not be contended that a general act passed with reference to lending money, repayable on a monthly basis, at a fixed percentage of interest, does not repeal a special act passed prior to the general act, authorizing the lending of money at a higher and different rate of interest to that provided by the general law subsequently passed.

IV.   The loan contract involved in this case was made by the Grenada Building & Loan Association and the applicants under the act of 1914, when in truth and in fact that act had been repealed by the enactment of chapter 136, Laws of 1916.   Then, if that be true, the contract here sued on is an unlawful contract, directly in conflict with and contrary to section 1, chapter 136, Laws of 1916 (sec. 5531, Hemingway's Code), and is not enforcible by the appellee because it is in violation of the statute.   *Ellis Jones Drug Co.* v. *William,* 103 So. 810; *Montjoy* v. *Delta Bank,* 76 Miss. 402; *Rice* v. *Maxwell,* 13 S. & M. 289.

We say in this case that the consideration in the contract here sued on is illegal, and directly in conflict with the statute; and such transaction is in fraud of the policy of the act of the legislature.   *Wayne County* v. *Happer,* 114 Miss. 775; 6 R. C. L., p. 701.   Therefore, the demurrer should have been sustained.

*Forrest G. Cooper,* for appellee.

I.   *Nature of building and loan associations.*   These associations are chartered as corporations by the state for two essential purposes:   (1) To permit its stockholders to accumulate funds to be returned to them; or (2) to permit its stockholders to accumulate funds to be used in the payment of money borrowed from the association.   Under certain restrictions loans may be made to borrowers who are not members.

II.   *Ten peculiar characteristics of associations.*   The Halsell case points out four requirements which distinguish associations from other money lenders.   They are all correct, but we submit that others equally important may well be recalled.   To our way of thinking these characteristics are as follows:

(1)   Associations must lend on no other security than real estate.

(2)  They are required to lend their money where the interest must be paid in equal monthly installments.

(3)  The average maturity of loans made must not be of less duration than three years.

(4)  The shares of stock must have a par value not greater than two hundred dollars and unless paid for in advance must be paid in monthly installments.

(5)  Each association must make report of its affairs, showing its solvent condition, to the state auditor or bank examiner. And the state officials may in proper cases cause thorough examinations to be made of the financial conditions of the associations and if found unsound, under certain conditions, may cause the association to be dissolved.

(6)  All loans must be consummated within six months from the time of the agreement to make said loan.

(7)  Each stockholder must be permitted to withdraw his unpledged stock at any time under due notice.

(8)  Unlike any other money lender the borrower in effect gets the benefit of the interest and payments which he himself makes. No dividends are paid. But the interest which a borrower pays benefits him to the same degree and to the same proportion which it benefits any other stockholder. The association is a non-profit, mutual organization wherein receipts from all sources hasten the maturity of the borrowers' stock and incidentally decreases the time when the accumulations on his stock will enable him to pay his debt.

(9)  Loans by associations have no fixed maturity date.

(10)  Every other lender of money under the laws of Mississippi can and does receive and pocket the interest agreed to be paid. But the association distributes all interest paid in equal proportions among all of its stockholders or borrowers; that is, they all get the benefit of it in the constantly increasing value of the stock which they hold.

When we keep these propositions in mind, it can readily be seen that lenders of money under these circumstances and within these restrictions are and should be entitled to receive in gross a higher rate of interest than other money-lenders. While the rate of interest paid is ten per cent per annum on the loan, the borrower in getting the benefit of the interest which he himself pays on his stock in reality pays considerably less than ten per cent per annum. The interest is paid monthly and is reloaned, the interest on the interest also going to the constantly increasing value of the stock.

But opposing counsel argue that while these things may be true, when the two sections of the 1912 law were amended, this permitted discrimination between lending money to stockholders and to borrowers who are not stockholders. Even if the appellants were borrowers who are not stockholders, this position is untenable because when sections 2 and 9 as amended are read together, the conclusion is inescapable that all loans to whomsoever made must or can be repaid in monthly installments.

Mississippi is in line with a large number of other states in providing special privileges and restrictions upon building and loan associations and in practically every instance where courts have construed the laws of other states giving associations the right to charge high rates of interest, those laws have been upheld. The following cases directly or indirectly uphold statutes which grant special privileges to building and loan associations. *Brandon* v. *Miller*, 118 Fed. 361; *Mulroonery* v. *Irish-Am. Sav. etc., Ass'n*, 249 Mo. 629, 155 S. W. 804; *Spithover* v. *Jefferson Bldg., etc., Ass'n*, 225 Mo. 660, 125 S. W. 766, 26 L. R. A. (N. S.) 1135 and note, 20 Ann. Case 1248 and note; *Cramer* v. *So. Ohio Loan etc., Co.*, 72 Ohio St. 395, 74 N. E. 200, 69 L. R. A. 415, 2 Ann. Cas. 990 and note; *Carmichael* v. *Indemnity Sav. etc., Co.*, 15 Oh. S. & C. P. 341; *Archer* v. *Baltimore Bldg., etc., Ass'n*, 45 W. Va. 37, 30 S. E. 241; *Sheldon* v. *Birmingham Bldg.*,

*etc., Ass'n,* 121 Ala. 278, 25 So. 820; *Cook* v. *Equitable
Bldg., etc., Ass'n,* 104 Ga. 814, 30 S. E. 911; *Winget* v.
*Quincy Bldg., etc., Ass'n,* 128 Ill. 67, 21 N. E. 12; *Free-
man* v. *Ottawa Bldg., etc., Ass'n,* 114 Ill. 182, 28 N. E.
182; *Holmes* v. *Smythe,* 100 Ill. 413 (Overr. *Monticello
Mut. Bldg., etc., Ass'n,* v. *Smythe,* 10 Centr. L. J. 434);
*Security Sav., etc., Ass'n,* v. *Elbert,* 153 Ind. 198, 54 N.
E. 753; *Shaffrey* v. *Workingmen's Sav., etc., Ass'n,* 64
Ind. 600; *McLaughlin* v. *Citizens' Bldg., etc., Ass'n,* 62
Ind. 264; *Iowa Sav., etc., Ass'n* v. *Heidt,* 107 Iowa 297,
77 N. W. 1050, 70 A. S. R. 197, 43 L. R. A. 689; *Zenith
Bldg., etc., Ass'n* v. *Heimbach,* 77 Minn. 97, 79 N. W.
609; *South Omaha Loan, etc., Ass'n* v. *Wirrick,* 63
Nebr. 598; *Vermont* v. *L. & T. Co.* v. *Whithed,* 2 N. D. 82,
49 N. W. 318; *Brooklyn Bldg., etc., Ass'n. Co.,* v. *Desnoy-
ers,* 26 Oh. Cir Ct. 352; *Spies* v. *Southern Ohio Loan, etc.,
Co.,* 24 Oh. Cir. Ct. 40; *Smoot* v. *People's Perpetual
Loan, etc., Ass'n,* 95 Va. 686, 29 S. E. 746, 41 L. R. A.
589; *Archer* v. *Baltimore Bldg., etc., Ass'n,* 45 W. Va.
37, 30 S. E. 241; *Moore* v. *Calbert Mortg., etc., Co.,* 13
Ga. A. 54, 78 S. W. 1097; *Home Bldg., etc., Ass'n.* v.
*McKay,* 217 Ill. 551, 75 N. E. 569, 108 A. S. R. 263 (rev.
119 Ill. A. 586); *Edwards* v. *Oil City Bldg., etc., Ass'n,*
137 Ill. A. 522; *Home Bldg., etc., Ass'n.,* v. *Nolan,* 21
Mont. 205, 53 Pac. 738; *Washington Nat. Bldg., etc.,
Ass'n.* v. *Fiske,* 20 App. (D. C.) 514; *Lincoln Bldg., etc.,
Ass'n.* v. *Graham,* 7 Nebr. 173; *Crabtree* v. *Old Domin-
ion Bldg., etc., Ass'n,* 95 Va. 670, 29 S. E. 741, 64 A. S.
R. 818.

III. *Chapter* 167, *Laws of* 1912, *as amended by chap-
ter* 216, *Laws of* 1914, *is not violative of paragraph D
of section* 90, *Constitution of* 1890. The building and
loan laws of Mississippi under review have been held
constitutional in *Halsell* v. *Merchants Union Ins. Co.,*
105 Miss. 268, 62 So. 645; and in *South Georgia Mercan-
tile Co.* v. *Toms,* 66 So. 980; but appellants argue that
the amendment of that act in 1914 renders said act un-

constitutional because the laws thereon as amended authorize associations to lend money to its members at one rate of interest and to non-members at another.

A reading of the whole law as amended will show conclusively that no substantial change was made. Certainly, the amended law does not permit associations to charge a different rate of interest to stockholders than to non-stockholders. The rate of interest to stockholders must not exceed ten per cent per annum. The rate to non-stockholders must not exceed ten per cent per annum. It matters not that the loan is payable in equal monthly installments. That does not alter or vary the rate of interest. The contract under review does not stipulate for a rate of interest exceeding ten per cent per annum.

Appellants argue that the law as amended does not require loans to stockholders to be payable in monthly installments, but section 2 considered with section 9 shows that all loans are to be repaid in monthly installments.

No system of mathematics which opposing counsel can devise will show that the rate of interest called for in this contract violates the usury law. As to non-stockholders, the law as amended provides that, as they do not directly participate in the profits as owners of stock, their loans mature at the same time and run for the same duration as loans made to stockholders so that in effect the non-stockholders, who are borrowers, get identically the same benefit and are charged exactly the same interest as stockholders.

IV. *The law applying to building and loan associations was not repealed by implication by the enactment of ch. 136, Laws of 1916 (secs. 5531 and 5532, Hem. Code).* Appellants contend that the enactment of this new interest law necessarily repealed the interest regulations of the building and loan laws, because they say that these two laws are repugnant and irreconcilable and because section 4 of the act provides that all laws in conflict therewith are repealed.

Repeals by implication are never favored. Beginning with a very early case and running down through scores of cases to and including *Dugger* v. *Panola County,* 104 So. 459, our supreme court has been in accord with the great weight of authority that repeals by implication are not favored and are allowed only where there is clear and unquestioned repugnancy. Even if the acts are repugnant, the latter must sometimes yield where general terms are used. It has been uniformly held that where statutes are seemingly in conflict the court will, if possible, adopt such construction as will give effect to both.

Another presumption in favor with the courts against the repeal of statutes by implication is that when the antecedent legislation is beneficial and commends itself to plain principles of justice, there is no repeal if there is any reasonable way to give effect to both statutes. See *White* v. *Johnson,* 23 Miss. 68; *Swann* v. *Buck,* 40 Miss. 268; *Cayce* v. *Stovall,* 50 Miss. 396.; *Smith* v. *Vicksburg,* 64 Miss. 615; *Campbell* v. *New Orleans Nt'l Bank,* 74 Miss. 526, 23 So. 25; *Owens* v. *Y. & M. V. R. R. Co.,* 74 Miss. 821, 21 So. 244; *Richards* v. *Patterson,* 30 Miss. 583; *McAfee* v. *Southern,* 36 Miss. 669; *Madison County* v. *Stewart,* 74 Miss. 160, 20 So. 857; *Ascher* v. *Moyse,* 101 Miss. 36, 57 So. 299; *Gilmore* v. *J. Lindsey,* 103 Miss. 468, 60 So. 580.; *Holly Springs* v. *Marshall County,* 104 Miss. 752, 61 So. 703; *Darnell* v. *Johnson,* 109 Miss. 570, 68 So. 780; *Dugger* v. *Panola County,* 104 So. 459.

Laws are presumed to be passed with deliberation and with full knowledge of all existing laws on the subject. And the presumption is that the legislature did not intend to interfere with or abrogate the former law relating to the same matter, unless the later act is repugnant to the earlier one, or fully embraces the subject-matter thereof, or unless the reason of the earlier law is removed. *Cumberland Telephone Co.* v. *State,* 54 So. 446.

Tested by the well-recognized principles we find no difficulty in harmonizing the two statutes in question, or in giving effect to both. In the first place the 1914

law relating to associations was passed just after the supreme court declared the association law constitutional. There is nothing in the title of the 1916 act under review justifying any conclusion that there was any legislative intent of repeal.

V. We have in this state a general law providing that the contract rate for interest is eight per cent without other limitations. We have another general law that building and loan associations may charge ten per cent interest where the money is loaned on real estate, in monthly installments, and for not less than three years, with the further requirement that each borrower, whether stockholder or not, gets the benefit of the accumulation of profits which apply to the reduction of his debt. Then we have the 1916 law providing that anyone may lend money on any kind of security for any length of time in monthly installments at five per cent for the entire period of the loan. All of these three schemes are general in their nature and apply to any citizens or corporations which come within the limitations of each class.

It is true that the 1916 law provides that all laws in conflict therewith are repealed, but that would be true even if the law did not so provide, our view being that there is no conflict. There is nothing showing, in the title of the act or in its wording or any presumption of legislative intent, that the building and loan associations were put out of business by the enactment of the 1916 law.

*Conclusion.* This is a case of tremendous importance to Mississippi. If decided for the appellants, the consequences would be disastrous to the prosperity of the state and remove one of the most valuable helps in its upbuilding. It would mean bankruptcy for a majority of the building and loan associations in this state. Surely, the legislature intended no such result and this court will not by construction make the legislature go further than they have said or intended.

*Cowles Horton,* also, for appellee.

My law propositions are: (1) The *note* itself controls and determines all the rights and relations of the parties in this lawsuit. This note is made an exhibit to the declaration and a printed form of the note is attached at the end of this brief for the convenience of the court.

(2) Regardless of any statement in appellants' pleadings, the note itself shows that this is not an installment loan at all. It is purely a transaction between a domestic building and loan association making a loan on the building and loan plan to its own shareholders. These shareholders (appellants) occupy a dual relation to the association. What they pay on their stock is paid by them *as stockholders;* what they pay *as borrowers* is the monthly interest installments. *B. & L. Ass'n* v. *McPhilamy,* 81 Miss. 61.

(3) Laws allowing building and loan associations to charge a higher rate of interest than other money-lenders do not violate the Constitution of 1890. Code of 1892, section 2348; *Halsell* v. *Merchants Union Ins. Co.,* 105 Miss. 268.

(4) Chapter 167, Acts of 1912, placing building and loan associations under state control, etc., was expressly sustained as constitutional in the *Halsell case, supra.* This note was executed under the law as announced in that case, and the courts cannot sustain appellants' arguments against the constitutionality of this legislative action to the injury of this note. *Lumber Co.* v. *State,* 97 Miss. 571, and authorities therein cited.

(5) If chapter 216, Acts of 1914, amending the act of 1912, is unconstitutional, it is void. This would leave the act of 1912 unaffected by the amendment; and under the act of 1912 and the Halsell case, the note sued on is unquestionably valid. *Campbell* v. *Bank,* 6 How. 676; 36 Cyc (D); *Oil Co.* v. *Texas,* 177 U. S. 47.

(6)   If the act of 1914 discriminates against an outside borrower in favor of a borrowing stockholder, appellants have no ground for complaint and the court will not entertain this contention at their hands, because they are in the favored class, if there be one, and in no position to complain of a discrimination which does not and cannot injure them.   *Gibbs* v. *Green,* 54 Miss. 592; *Adams* v. *Bank,* 74 Miss. 307; *Quin* v. *State,* 82 Miss. 75; *Jackson* v. *Fire Ins. Co.,* 132 Miss. 425.

(7)   The classification of building and loan associations separate from other persons and corporations has been the rule since, as well as before, the Constitution of 1890; and this classification has never been questioned on any ground or to any extent as to a domestic building and loan association in its dealings with its own members.   Code of 1892, section 2348; Act of 1912 and Act of 1914, *supra,* Laws of 1920, chapter 244.

(8)   If the legislature could not constitutionally authorize these associations to charge a higher rate of interest than other money lenders can charge in their dealings with outside borrowers having no other connection with the association, this provision is entirely separable from the provisions with regard to loans made to its own stockholders and the latter provisions, which govern this case, would not be affected thereby.   *Brown* v. *Beatty,* 34 Miss. 242; *State* v. *Cotton Oil Co.,* 95 Miss. 20; *State* v. *Board,* 131 Miss. 689.

(9)   There is no discrimination against outside borrowers whatever.   All pay the same monthly interest and the building and loan plan, with which the legislature was dealing in the act of 1914, is necessarily the monthly payment plan.

(10)   Building and loan association laws are not repealed or remotely affected by chapter 136, Laws of 1916, which deals with straight installment loans made by persons and corporations who do not qualify under the act of 1912 as building and loan associations.   As the law stands today, there are three separate and dis-

tinct laws governing interest in this state; viz: (a) the general interest statutes; (b) statutes applicable only to those entitled to and who do qualify under the building and loan supervision plan; and (c) all persons not in the second class making loans payable in monthly installments of any duration. The court can, and it is its duty, to reconcile and harmonize these different statutes dealing entirely with different character of loans, so as to bring about no repeal of any of them. *Smith* v. *Vicksburg,* 54 Miss. 615; *Richards* v. *Patterson,* 30 Miss. 583; *Ascher* v. *Moyse,* 101 Miss. 37; *Darnell* v. *Rev. Agt.,* 109 Miss. 570; *Jones* v. *Melchoir,* 71 Miss. 115. See also 103 Miss. 479; 102 So. 234; 100 So. 202; 72 So. 481; 109 U. S. 556; 139 Miss. 489; 50 Miss. 401; 134 Miss. 208; and 126 Miss. 852.

(11) If the law of 1916 did govern loans on installment plan, even when made by a building and loan association, this case is not affected thereby. This is true because the act of 1916 *is specifically limited* to loans made where *principal and interest are aggregated and repaid in monthly installments,* and in the case at bar appellants, under their note, do not pay one cent on the *principal of the debt* by monthly, or any other installments.

(12) Partial payment statute has never applied to the building and loan plan and, under the act of 1916, does not now apply even to loans made under the act of 1916. Not only is this true but appellants overlook the fact that section 2079, Hemingway's Code, which they cite, existed as section 2681, Code of 1906, when the Halsell case was decided and was also a section of the Code of 1892 (sec. 2351) in the very same chapter with section 2348, Code of 1892, already referred to. This point has, therefore, been settled ever since the Constitution of 1890 was adopted.

*R. H. Thompson,* for appellee as *amicus curiae.*

It will be helpful to have the mind grasp at least two features of the law applicable to building and loan associations as determined by the American courts, and especially by this court. The features of the law to which reference is made are well expressed in the fourth and fifth paragraphs of the syllabus to *People's Building & Loan Ass'n* v. *McPhillamy,* 81 Miss. 61.

I. If the correctness of the contention of appellants be assumed, wherein distinction is sought to be made between borrowers who are members of the association and those who are not, claiming that building and loan associations are unauthorized to contract with its members for monthly payments, nevertheless it is submitted the judgment of the court below should be affirmed.

The record does not show that the appellee association ever made a loan to a borrower who was not a member of the association and it cannot be affirmed that the appellee had two different classes of borrowers, or that it departed from the distinguishing features of a building and loan association.

Of course, if a contract be usurious, all interest is forfeited; but we know as well that, where the interest charged does not equal twenty per cent per annum, all payments made on a usurious contract must be applied to the principal debt before recovery can be had by the debtor against the creditor for such payments. *Commercial Bank* v. *Auze,* 74 Miss. 699.

The credits we have suggested, if the note should by any process of reasoning be found to be usurious, were not pleaded or claimed by appellants in the court below and will not warrant a reversal of the judgment under review. On their own contentions the appellants are not entitled to a reversal of the judgment from which they have appealed.

II. *Section 9, chapter 216, Laws of 1914 (section 3922, Hemingway's Code) is not unconstitutional.* It is claimed by appellant that the section violates paragraph (d), section 90, Constitution of 1890. The question has already been decided against them by *Halsell* v. *Merchants Union Ins. Co.,* 105 Miss. 268, 62 So. 645; *South Georgia Mercantile Co.* v. *Toms,* 108 Miss. 537, 66 So. 980.

It is true that the Halsell case construed section 9, chapter 167, Laws of 1912, but there is no substantial difference in the statutes so far as relates to their constitutionality. Both statutes are general laws.

III. *Section 9, chapter 216, Laws of 1914, amending section 9, chapter 167, Laws of 1912 (section 3922, Hemingway's Code) was not repealed by chapter 136, Laws of 1916 (section 5531, Hemingway's Code).* Chapter 136, Laws of 1912 and chapter 216, Laws of 1914, treat alone of building and loan associations. Chapter 136, Laws of 1916, has no application and in no way relates to such associations. That the act of 1916 does not repeal the acts of 1912 or 1914 is clearly shown by other briefs in appellee's behalf.

*Everett & Forman,* in reply to the brief of *amicus curiae.*

I. Chapter 216, Laws of 1914, and especially section 9 thereof (section 3922, Hemingway's Code) is violative of paragraph D, section 90, Constitution of 1890. To review briefly the history of the Mississippi legislation, with reference to the general statutes fixing the rate of interest, see section 2348, Code of 1892, brought forward into the Code of 1906 as section 2678. It seems that there was no further legislation on this question until the legislature of 1912 passed chapter 229 and by that act amended section 2678, Code of 1906. This act was brought forward into Hemingway's Code as section

2075, which is now the general statute of Mississippi, regulating the amount of interest to be charged. That part of section 2348, Code of 1892, which provided that that section should not apply to building and loan associations was expressly eliminated by the legislature of 1912.

Looking then into the intention of the legislature, by its acts passed and approved, it was clearly the purpose of the legislature to put all lenders of money on the same footing and basis with reference to the rate of interest to be charged.

By chapter 167, Laws of 1912, the legislature enacted for the first time legislation with reference to the operation of building and loan associations. By section 9 of that act, the legislature undertook to authorize building and loan associations to charge a greater rate of interest than eight per cent.

II. We are not unmindful of the fact that this court passed favorably upon the constitutionality of chapter 167, Laws of 1912, in *Halsell* v. *Merchants Union Ins. Co.,* 105 Miss. 268; but it is our contention that the court in deciding the Halsell case did not take into consideration the history of and the past legislation with reference to the fixing of the rate of interest. Had the whole scheme of previous legislation been taken into consideration, we feel safe in asserting that the first opinion rendered in the Halsell case would have stood.

By chapter 216, Laws of 1914, passed after the opinion in the *Halsell case,* chapter 167, Laws of 1921 was amended.

Before a special statute conferring special privileges, as is done in the statute above, can be constitutional, there must exist some intrinsic reason why the law should operate upon persons of that class and not upon all, and a special reason why some should be affected differently from others by the law, and this classification must be based upon differences which are either defined by the Constitution, or are natural or intrinsic; and should sug-

gest a reason that may reasonably be held to justify the diversity in the legislation. The separate class must be characterized by some substantial qualities or attributes which renders such legislation necessary for that class. *Bloss* v. *Louis,* 109 Cal. 493; *Crause* v. *Durbrow,* 127 Cal. 681; *Safety Building, etc., Co.* v. *Eckler,* 106 Ky. 115; *Simpson* v. *Kentucky, etc., Ass'n,* 101 Ky. 496.

By chapter 216, Laws of 1914, the legislature not only authorizes building and loan associations to lend money at ten per cent per annum to its members, but it went further and classified borrowers in section 9 of the amendment and provides that *members and those participating in the profits* can borrow money from the association and pay a rate of interest not to exceed ten per cent per annum, and the other class; to-wit: *those who are not members and who do not participate in the profits* can borrow money at ten per cent per annum, payable in equal monthly installments. The court can readily see that money to be repaid in monthly installments brings a much greater rate of interest than money payable annually, for each month the principal is reduced and the interest is increased.

Surely, the legislature cannot grant to a corporation or class of corporations the right to charge a higher rate of interest than the rate fixed by the general law, nor to suspend the general law in favor of any corporation or class of corporations or associations. *Miss. Building & Loan Ass'n* v. *McElveen,* 100 Miss. 28.

III. The contract is usurious. Counsel says that appellees occupy a dual relation to the association; that is, that of shareholder and that of debtor; therefore, they cannot complain of the contract which was made. Granting for argument's sake that they are correct in saying that appellants occupy a dual relation, yet that cannot affect the fact that the association has charged usurious interest in the present contract. *Fidelity Savings Ass'n* v. *Shea,* 6 Idaho 405.

Where the contract between the parties is simply a loan contract, as is in this contract, which is evidenced by the pleadings, if the premiums and other charges in connection with interest charges exceed the general legal rate, the contract is usurious. *Fidelity Savings Ass'n* v. *Shea, supra; Simpson* v. *Kentucky, etc., Ass'n,* 101 Ky. 496; *Watts* v. *Nat'l Building & Loan Ass'n,* 102 Ky. 29; *Mills* v. *Salisbury, etc., Ass'n,* 75 N. C. 292; *Rollin* v. *Old Dominion, etc., Ass'n,* 116 N. C. 877; *Turner* v. *Interstate, etc., Ass'n,* 47 S. C. 397; *Interstate, etc., Ass'n,* v. *Holland,* 65 S. C. 449; *Crabtree* v. *Old Dominino, etc., Ass'n,* 95 Va. 670; *Middle States Loan Ass'n* v. *Miller,* 104 Va. 464.

It is also a settled rule of law: "Where the legal rate of interest is exceeded because of the fact that the amount of indebtedness is being reduced by payments but the regular payments of interest are not reduced accordingly, the contract is usurious." *Southern, etc., Ass'n* v. *Harris,* 98 Ky. 41; *Pryse* v. *People's etc., Ass'n,* 41 S. W. 574.

Wherever the interest charged by building and loan associations exceeds the interest allowed to be charged by the general statute fixing the rate of interest, the transaction has been held to be usurious in the following cases: *Miss. Bldg., etc., Ass'n* v. *McElveen,* 100 Miss. 16; *Sosa* v. *Pettiway,* 67 Fla. 18; *McIntosh* v. *Thomasville Real Est., etc., Co.,* 138 Ga. 128; *Moore* v. *Calvert Mortg., etc., Co.,* 13 Ga. App. 54; *German-American Bldg., etc., Ass'n* v. *Trainor,* 185 Ill. App. 345; *Holmes* v. *Royal Loan Ass'n,* 166 Mo. App. 719; *Holmes* v. *Webb City Bldg., etc.,* 189 Mo. App. 95; *New Bern Bldg., etc., Ass'n* v. *Blalock,* 160 N. C. 490; *Lindsey* v. *Chic. Bldg., Ass'n,* 39 Okla. 12; *State* v. *Myers,* 52 Pa. Sup. Ct. 179; *Starta* v. *Jarett,* — W. Va. 85.

Then section 2075, Hemingway's Code, and the corresponding sections of the preceding codes, which is, and has been for a number of years, the general statute regulating the rate of interest to be charged was applied

to building and loan contracts in the following cases: *Natchez, etc., Ass'n* v. *Shields,* 71 Miss. 630; *People's Loan Ass'n* v. *McAlroy,* 77 Miss. 434; *Jackson Loan Ass'n* v. *Leonard,* 74 Miss. 810; *Sokoloski* v. *New South Loan Ass'n,* 77 Miss. 155; *Crawfton* v. *New South Loan Ass'n,* 77 Miss. 166; *So. Loan Ass'n* v. *Toney,* 78 Miss. 916; *Shannon* v. *Ga. Loan Ass'n,* 78 Miss. 955; *Nat'l Loan Ass'n* v. *Wilson,* 78 Miss. 933; *Nat'l Loan Ass'n* v. *Pinkston,* 79 Miss. 468; *Nat'l Loan Ass'n* v. *Brayhan,* 80 Miss. 407; *Ga. Loan Ass'n* v. *Shannon,* 80 Miss. 60; and *Nat'l Loan Ass'n* v. *Farnham,* 81 Miss. 364.

In *Building & Loan Ass'n* v. *Toney,* 78 Miss. 916, and numerous other cases, this court has held that in case of usury the statutory penalty imposed upon the lender vitiated the contract, so far as its building and loan features were concerned, and changed the relation between the parties to that of simply debtor and creditor.

It is immaterial whether appellee calls the payments of forty dollars per month principal, stock subscription or shares. If counsel's contention be admitted as correct, that appellants were paying for stock in the association, then the same usurious principle applies.

We have made some comparative statements showing the results of loan contracts based on one thousand dollars, as between the Jackson association and the Grenada association. The Jackson Building & Loan Association receives only eight per cent per annum on its money, because it credits the monthly payments in accordance with the partial-payment plan, provided by section 2079, Hemingway's Code. That company receiving two hundred and twenty dollars and seven cents interest in sixty-one months as against four hundred ninety-nine dollars and fifty cents interest received on the same amount of loan and at the same rate of interest applying the payments as applied by the Grenada Building & Loan Association. Applying the Grenada Building & Loan plan, we find that it will take a borrower seventy-five months to repay the one thousand dollars at eight

per cent, instead of sixty-one months, and he pays the Grenada Building & Loan Association four hundred ninety-nine dollars and fifty cents interest on that loan at eight per cent.

Applying the payments in accordance with the Grenada Building & Loan Association's plan, making the appellant pay thirty-three dollars and thirty-three cents per month interest and forty dollars per month principal or stock on the four thousand dollar loan, we find that one-fourth of that would be a payment of eighteen dollars and thirty-three cents per month for one hundred months, eight dollars and thirty-three cents being interest and ten dollars principal or payment on stock, and it would take one hundred months to pay the one thousand dollars and on that he has paid eight hundred thirty-three dollars interest, paying into the Grenada Building & Loan Association one thousand, eight hundred and thirty-three dollars to pay a note of one thousand, payable at ten dollars per month.

Now this is the contract between them, as evidenced by the note sued on and the figures, showing a rate of interest far in excess of twenty per cent, the appellee then falls under the condemnation of section 2075, Hemingway's Code.

IV. *As to the repeal of that part of the building and loan statute authorizing them to charge ten per cent.* It is not our contention that the act of 1914 was repealed by implication, but it is our contention that there is a direct conflict between that act, authorizing building and loan associations to charge ten per cent per annum, payable monthly and section 1, chapter 136, Laws of 1916. See *U. S.* v. *Tymen,* 20 L. Ed. 153. Also *Chase* v. *U. S.* 256 U. S. 417; *King* v. *Cornell,* 106 U. S. 395; *Paquete* v. *Habana,* 175 U. S. 677; *U. S.* v. *Yuginovich,* 256 U. S. 551.

Therefore, we earnestly submit that the laws here attacked are unconstitutional; that the contract between the parties is grossly usurious and unenforcible in the

courts of Mississippi; and, lastly, that the acts of 1912 and 1914 were repealed by chapter 136, Laws of 1916.

Argued orally by *Frank E. Everett,* for appellants, and *Cowles Horton* and *Forrest G. Cooper,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellee Building & Loan Association instituted suit against the appellants E. H. and Clara B. Tiley to recover on a note executed by them in the sum of four thousand dollars, which was to be paid on the building and loan installment plan by the borrowers, who were also stockholders in the association and shared in its profits. The note is in the following form, to-wit:

"Exhibit A to Declaration.

"Whereas, we as members of the Grenada Building & Loan Association, and the holder of forty shares of stock of the first series, have obtained a loan from said association to the full amount of the maturity value of each of said shares of stock, do hereby promise to pay to said association on the first Monday in each and every month the sum of thirty-three dollars and thirty-three cents interest upon said loan, and we also promise to pay on the first Monday in each month the sum of one dollar for monthly dues on each of said shares of stock, and also such fines as shall be assessed against us, sanctioned by the acts of incorporation and by-laws of said association, for any defaults we may make in the payment of the above-mentioned interest installments and monthly dues. These payments are to continue until the receipts from all sources by first series, after losses and expenses are paid, shall equal the maturity value of one hundred dollars upon each share of stock in said first series. We further promise, in case of default in the payment of the interest installment upon said loan or monthly dues, or any part thereof, to pay upon de-

mand to said association four thousand and no/100 dollars, together with all monthly dues unpaid, interest and fines due from us to said association, after deducting the value of said shares of stock at the time of said default, according to the rules and regulations of said association. We also further agree to keep the premises on which a deed of trust of even date herewith is given to secure the aforesaid loan, insured against loss or damage by fire or tornado, to an amount sufficient to cover the indebtedness intended to be secured by said deed of trust until the maturity of this note, and that there shall be embraced in the policy of insurance the following clause: The loss, if any, under this policy shall be payable to Grenada Building & Loan Association, of Grenada, Miss.

"If this note is placed in the hands of an attorney for collection, the makers and indorsers hereof agree to pay the holder ten per cent. attorney's fee upon amount due.

"E. H. TILEY.
"CLARA B. TILEY."

The appellants denied liability upon several grounds, none of which have sufficient merit to warrant discussion except two or three which we shall presently consider and decide.

The appellee association was organized under the building and loan statute of our state (chapter 167, Laws of 1912) as amended by chapter 216, Laws of 1914 (chapter 87, Hemingway's Code), and was operating in the regular manner provided by law when the loan here involved was made to the appellants, who were stockholders in the association.

It is contended that the above law violates section 90 of the Constitution of 1890, in that it is a special act which discriminates as between borrowers who may, or may not, be stockholders in the association. We see no merit in this contention, because the question was definitely settled against this view in the case of *Halsell* v.

*Merchants' Union Insurance Co.,* 105 Miss. 268, 62 So. 235, 645, Ann. Cas. 1916E, 229. The transaction here involved and the character of building and loan association making the loan in this case are the same as in the *Halsell case, supra.* A careful reading of the Halsell case will be convincing that all of the questions presented on this appeal were decided in that case, except possibly one or two, which we shall now proceed to consider.

It is urged here that the character of contract of monthly payments by the borrower-stockholder results in a usurious charge of more than ten per cent against the borrower; and at first glance it might seem to appear that the charge would be more than ten per cent. But we disagree with the contention, because the stockholder would share in the profits in the way of dividends, and thus the charge of interest paid by him would be reduced below ten per cent. per annum; at least the record manifests this result; and we may say again that the *Halsell case, supra,* is decisive of this point against the appellants. Also see *P. B. & L. Ass'n* v. *McPhilamy,* 81 Miss. 61, 32 So. 1001, 59 L. R. A. 743, 95 Am. St. Rep. 454; *Wisconsin Lumber Co.* v. *State,* 97 Miss. 571, 54 So. 247.

The last ground presented, which is more serious than any of the others, is whether or not chapter 136, Laws of 1916 (Hemingway's Code, sections 5531-5533), which permits installment loans by persons or corporations other than building and loan associations at five per cent. per annum interest, payable in monthly installments, etc., repeals the said acts of 1912 and 1914 authorizing building and loan associations, such as is the appellee in this case; that the suit here must fail because the appellee has no authority to act as a building and loan association.

We are unable to agree with the position of counsel for appellant on this point, because we do not think the 1916 act repeals the 1912 act, either expressly or impliedly. The scheme authorized by the latter act is wholly different from that authorized by the former act,

and we cannot see wherein the latter act conflicts with the first or was intended by the legislature to interfere with the operation under the former act, but the legislation was for the purpose only of granting the privilege to all persons and corporations to lend money at five per cent. on monthly installments on long terms. We think the latter act is valid, but does not repeal the former laws on building and loan associations in this state.

In view of these conclusions the judgment of the lower court is affirmed.

*Affirmed.*

ETHRIDGE, J. (dissenting).

I am unable to concur in the majority opinion in this case for two reasons: (1) I think the contract here involved is controlled by chapter 136 of the Laws of 1916, which provides for exactly the scheme reflected by this litigation in the present case, and, being the latter act, repeals chapter 216, Laws of 1914; and (2) if this law of 1916 does not repeal the act of 1914, and if the Act of 1914, chapter 216, is applicable, the said law is void for the reason that it is in conflict with the Constitution of the state, in that it violates sections 87 and 89 and paragraph (d) of section 90 of the Constitution of 1890.

Section 1 of chapter 136 of the Laws of 1916 provides that:

"Any persons, natural or artificial, including domestic and foreign corporations, lending money in this state to be paid back in monthly installments, may charge interest thereon at the rate of five per cent. per annum or less, for the entire period of the loan, aggregating the principal and interest for the entire period of the loan, and dividing the same into monthly installments, and may take security therefor by mortgage, deed of trust, or title, with waiver of exemption, upon and to real estate or personal property, or both."

The plan is that five per cent. for the entire period is calculated and divided into monthly installments, and,

if paid in this way, it would be an average interest of ten per cent., because the average period of payment would be one-half of the aggregate time of the notes. Section 2 provides:

"That in any such loan contract provision may be made requiring the borrower, upon exercising any option to repay the loan before maturity, or upon any default in the payment of the monthly installments of principal and interest or upon the breach of any covenant entitling the lender to declare the whole indebtedness due and payable and to a foreclosure of the security, to repay the loan upon the following basis of settlement: The principal debt, with interest thereon at the rate of ten per cent. per annum, and allowing credit for all payments of installments of principal and interest upon loan, with interest thereon at the rate of ten per cent. per annum from date of payment to said lender, computed annually in accordance with the laws of the state of Mississippi."

It will be seen from a reading of these two sections together that they cover precisely what was done in the present case.

It is provided in section 3 of the act:

"That any such loan contract, and all the provisions thereof, shall be valid for the amount of the principal and interest charged, and such contracts shall not be held usurious."

This law is a general law covering every kind of plan of lending money to be paid back in monthly installments, and provides, in detail, how a default may be dealt with, and expressly authorizes the holder of a note or contract to provide for the advancement of the maturity of all notes or payments in case of default in meeting any one or more of them. It includes the plans provided for in chapter 216 of the Laws of 1914, and under the rules of construction announced in *Swift & Co. v. Sones* (Miss), 107 So. 881; *State ex rel. Knox v. Wyoming Manufacturing Co.,* 138 Miss. 249, 103 So. 11; *M. & O.*

*R. R. Co.* v. *Weiner,* 49 Miss. 739; *Meyers* v. *Marshal Co.,* 55 Miss. 347—in which cases it was held that where the legislature in a later act covers the entire scheme dealt with in the former act, the former act will be repealed by the later act, although there is some difference in the provisions of the two statutes. A subsequent statute, not repugnant in its provisions to a former one, but clearly intended to prescribe the only rule in the case provided for, repeals the former statute. It cannot be assumed that the legislature intended a general act which operates throughout the state to exist when a later act covering exactly the same subject-matter but containing minor details of difference could both operate at the same time in the same territory and on the same persons. They cannot both in such case be the law. Justice requires that every person shall be able to know what law shall govern his rights, and it is not desirable nor permissible to give one of the parties the option of selecting one of two laws, either of which might control his rights, while each is dissimilar in its provisions. It is the very essence of law that it shall be certain in its provisions and fixed in its terms, and when the legislature enacted chapter 136 of the Laws of 1916, it must be assumed that, inasmuch as that is a general law, that it was intended to repeal all laws upon the same subject, and this would be necessarily so if the other statutes are general laws.

In the second place, I think that chapter 216 of the Laws of 1914 is void because it undertakes to suspend the general law on the subject of interest charges in favor of particular private corporations and persons, which is prohibited by the above named sections of the Constitution. The general statute upon the subject of interest is section 2075 of Hemingway's Code (chapter 229 of the Laws of 1912), which fixes the highest contract rate of interest per annum at eight per cent., and, in the absence of a contract, at six per cent. This statute is applicable to all money lenders without reservation or exception.

It is general in its terms, applies to everybody, and is in force throughout the state. It was in force at the time chapter 216 of the Laws of 1914 was enacted, and the effect of the provisions of chapter 216 is not to change the rate of interest as to persons doing the same kind of business, but is to change the rate of interest in favor of a special class of money lenders giving them rights that are denied to other people engaged precisely in the same kind of business.

It is provided in section 2075, Hemingway's Code (chapter 229 of the laws of 1912), that:

"If a greater rate of interest than eight per centum shall be stipulated for or received in any case, all interest shall be forfeited, and may be recovered back, whether the contract be executed or executory."

Under this law, if a natural person charges more than eight per cent. per annum, he loses the interest on his money although a corporation called a building and loan association may do the same business and charge ten per cent. per annum without being denied the right to sue for and recover the interest. Under section 2 of chapter 216 of the Laws of 1914, it is provided:

"The term 'building and loan association,' as used in this act, for the purposes of this act only, shall apply to and include any domestic or foreign corporation, company, savings association, partnership, person, society, or association organized for the purpose of enabling its members, or borrowers who are not members, to acquire real estate, make improvements thereon, remove incumbrances therefrom or loan money to be repaid in monthly installments, or for the accumulation of a fund to be returned to its members who do not obtain advances thereon."

It will be noted that the building and loan association is to be such, only "for the purposes of this act," and is not a building and loan association in the general legal acception of the meaning of those words. The persons who constitute such organization are such as are

organized for the purpose: (1) To acquire real estate; (2) to make improvements thereon; (3) to remove incumbrances therefrom; (4) to loan money to be repaid in monthly installments; and (5) by the accumulation of a fund to be returned to its members who do not obtain advances thereon. The company or organization does not have to perform all of these functions. It will be noted that these things cover all kinds of loans affecting real estate. They may loan a person money who may seek to buy any kind of real estate whether with a desire to improve it or not. It may be for the rankest purpose of speculation. They may make loans for any kind of improvement on any kind of real estate having no reference to any kind of use necessary to further the general demands of society. They may be engaged in one branch of the business alone. They may loan money simply for the purpose of removing incumbrances from real estate; also they may loan money for any purpose whatever if it is to be repaid in monthly installments. A loan for this purpose need not have any restrictions whatever except that it will be repaid monthly . Every individual who lends money at all probably lends it for one of these purposes. If he is unorganized under the law, he cannot charge more than eight per cent. whether it be repaid monthly or for any other length of time. He may lend money for the purpose of buying real estate precisely as the building and loan association lends it for such purpose, but if he is unorganized into a corporation, he cannot charge more than eight per cent., and if he either contracts for or receives more than eight per cent., he loses the right to collect the interest.

It will be noted also from a reading of this section that the act does not confine the association to lending to its members as was provided in section 2348, Code of 1892, consequently the case of *Building & Loan Association* v. *McPhilamy*, 81 Miss. 61, 32 So. 1001, has no application. As pointed out in that case, the members of the

building and loan association shared the benefits as well as the burdens and participated in the profits and losses of the association, but the act here under review gives the building and loan association the right to loan to any person, regardless of membership, and the right to charge such person, although a nonmember, ten 'per cent. Section 9 of the act permits contracts for loans to be made to the members of the association and those who are not members, but it provides also that loans shall be payable in equal monthly installments for the average time of duration of such loans, but not to be of less duration than three years. Thus it will be seen that the legislature has carved out a bunch of favorites among money lenders, and authorizes its favorites to charge ten per cent. while it denies to others this right, which, according to my conception, violates not only the sections of the state Constitution, hereafter quoted, but also the provisions of the Fourteenth Amendment of the Constitution of the United States. It is said that it is permissible to classify, and that by means of classification the law may be general although it does not apply to all persons in the state. The legislature may classify when there is a sufficient basis of classification, but there must be some distinction that bears a just and proper relation to the classification and not mere arbitrary selection. The mere fact of classification will not relieve a law from being unconstitutional. The classification must be based on reasonable grounds having some sub· stantial basis for its justification, and it cannot be mere arbitrary selection. This has been held in a long line of decisions in the United States supreme court as well as the state courts.

It is especially pointed out in *Southern Railway Company* v. *Greene,* 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, that the classification must be based upon some real and substantial distinction bearing a reasonable and just relation to things in respect to which the classification is imposed. At page 417 of

216 U. S., at page 291 of 30 S. Ct., at page 541 of 54 L. Ed., at page 1250 of 17 Ann. Cas., the court said:

"It remains to consider the argument, made on behalf of state of Alabama, that the statute is justified as an exercise of the right of classification of the subjects of taxation, which has been held to be entirely consistent with the equal protection of the laws guaranteed by the Fourteenth Amendment. It is argued that the imposition of special taxes upon foreign corporations for the privilege of doing business within the state is sufficient to justify different taxation, because the tax imposed is different, in that the one imposed on the domestic corporation is for the privilege of being a corporation, whereas the one on the foreign corporation is for the privilege of such corporation to do business within the state. While reasonable classification is permitted, without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification. *Gulf, etc., R. Co.* v. *Ellis,* 165 U. S. 150, 155, 165, 17 S. Ct. 255, 41 U. S. (L. Ed.) 666; *Cotting* v. *Kansas City Stockyards Co.,* 183 U. S. 79, 22 S. Ct. 30, 46 U. S. (L. Ed.) 92; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 559, 22 S. Ct. 431, 46 U. S. (L. Ed.) 679."

See, also, *Heath, etc., Co.* v. *Worst,* 207 U. S. 338, 28 S. Ct. 114, 52 L. Ed. 236; *L. & N. Railroad Co.* v. *Melton,* 218 U. S. 36, 30 S. Ct. 676, 54 L. Ed. 921, 47 L. R. A. (N. S.) 84; *Southwestern Oil Co.* v. *Texas,* 217 U. S. 114, 30 S. Ct. 496, 54 L. Ed. 688; *Magoun* v. *Bank,* 170 U. S. 283, 18 S. Ct. 594, 47 L. Ed. 1037; *Watson* v. *Maryland,* 218 U. S. 173, 30 S. Ct. 644, 54 L. Ed. 987; *Jones* v. *Brim,* 165 U. S. 180, 17 S. Ct. 282, 41 L. Ed. 677; *Tinsley* v. *Anderson,* 171 U. S. 101, 18 S. Ct. 805, 43 L. Ed. 91.

Section 87 of the Constitution of 1890 provided that:

"No special or local law shall be enacted for the benefit of individuals or corporations, in cases which are or can be provided for by general law, or where the relief sought can be given by any court of this state; nor shall the operation of any general law be suspended by the legislature for the benefit of any individual or private corporation or association, and in all cases where a general law can be made applicable, and would be advantageous, no special law shall be enacted."

It will be noted that no special or local law shall be enacted for the benefit of individuals or corporations in cases which are or can be provided for by general law, or where relief can be obtained in court; that no general law shall be suspended for the benefit of an individual or private corporation. In the case of *Prince George's County Com'rs* v. *Baltimore & Ohio Railroad Co.,* 113 Md. 179, 77 A. 433, it is said:

"A special law is one that relates to particular persons or things of a class as distinguished from a general law which applies to all persons or things of a class."

Section 33 of article 3 of the Maryland Constitution, provided that the General Assembly shall pass no special law for any case for which provision has been made by an existing general law. The Code (article 23, section 283) of Maryland contains general provisions prescribing the conditions under which railroad companies throughout the state may be required by county commissioners to protect the highways crossing the railroad track, at grade, by flagmen, or safety gates, etc. The Act of 1908, chapter 398, directed that a certain railroad company should erect and maintain safety gates with flagmen at two designated crossings of its tracks in a certain county under a daily penalty for failure to comply with the act, and this act was held unconstitutional and void because it was in conflict with that section of the Constitution. At page 183 of the official report (77 A. 434), of this case, the court said:

"The other objection to the act in question we think is well founded. Section 33 of article 3 of the Constitution of this state, expressly provides that 'The General Assembly shall pass no special law for any case for which provision has been made by an existing general law.' A special law is one that relates to particular persons or things of a class, as distinguished from a general law which applies to all persons or things of a class. In *Baltimore City* v. *Allegany County,* 99 Md. 1 [57 A. 632], Judge Pearce said: 'In Cooley's Constitutional Limitations, 165, note, it is said: "The term general, when used in antithesis to special, means relating to all of a class, instead of two persons only, of that class." ' In the case of *Schmalz* v. *Wooley,* 56 N. J. Eq. 649, 39 A. 539, the court said that where a statute 'does not relate to persons or things of a class, but to particular persons or things of a class, it is special, as contradistinguished from a general law.' And in volume 7 of Words and Phrases, 6578, it is said: 'Special laws are those made for individual cases, or for less than a class requiring laws to its peculiar conditions and circumstances.'

"The obvious meaning of this provision of the Constitution is, that where there is a general law providing for a certain class of cases, the legislature shall not pass a special law for any particular case of that class. As said by Judge Alvey, in *State* v. *County, Commissioners of Balto. Co.,* 29 Md. 516: 'The special laws contemplated by the Constitution are those that provide for individual cases,' and the object of this provision 'was to prevent the abuses that occurred in the great multiplicity of legislation for particular and individual cases.' "

In *Dundee* v. *School District* (C. C.), 21 F. 151, it was said:

" A 'special' act affects a part only of the subject to which it relates, and whether an act is considered 'public' or 'private' is not relevant to the question of whether it is 'special' or 'general.' "

In *State* v. *Des Moines,* 96 Iowa, 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381, it was held that, under a section of the Constitution of that state prohibiting the passing of special laws in certain cases, that the legislature could not pass laws in the prohibited cases. In *State* v. *Somers' Point,* 52 N. J. Law, 32, 18 A. 694, 6 L. R. A. 57, the court said:

"A law is special or local, as contradistinguished from general, in the sense of the prohibitory clauses in this paragraph of the Constitution, which embraces less than the entire class of persons or places to whose condition such legislation would be necessary or appropriate, having regard to the purpose for which the legislation was designed. A law which so particularizes, and by such means is restricted in its operation to persons or places which do not comprise all the objects which naturally belong to the class, is special or local. . . ."

In *State* v. *Yard,* 42 N. J. Law, 357, the same court held that local and special laws are all those that rest on a false or deficient classification. Their vice is that they do not embrace all the class that they naturally embrace. They create preferences and establish inequalities; they apply to persons, things, or places possessed of certain qualities or situations, and exclude from their effect other persons, things, or places which are not dissimilar in these respects. In *State* v. *Miksicek,* 225 Mo. 561, 575, 125 S. W. 507, 511, 135 Am. St. Rep. 597, at page 605, the court said:

"In *State* v. *Julow,* 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443, this court, in announcing the rule applicable to the proposition now under discussion, used this language: 'The legislature may legislate in regard to a class of persons, but they cannot take what may be termed a natural class of persons, split that class in two, and then arbitrarily designate the dissevered fractions of the original unit as two classes, and enact different rules for the government of each. This would be mere arbitrary classification without any basis

of reason on which to rest, and would, resemble a classification of men by the color of their hair or other individual peculiarities, something, not competent for the legislature to do. *State* v. *Herrmann,* 75 Mo. 340.'

"The rule of construction in this state has been firmly established; in fact, as was said in *State* v. *Walsh,* 136 Mo. 400, 37 S. W. 1112, 35 L. R. A. 231, it is so well settled that it admits no contravention—that is, 'that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special. *State* v. *Tolle,* 71 Mo. 645; *State* v. *Herrmann,* 75 Mo. 340; *State* v. *Julow,* 129 Mo. 163, 31 S. W. 781, 29 L. R. A. 257, 50 Am. St. Rep. 443.' "

Measured by these standards, the law is clearly unconstitutional, because it is special rather than a general one.

In the case before us, a special class of money lenders is carved out of the general class of money lenders by an inadequate classification. I cannot see how there can be any special reason to allow an association the privilege of charging ten per cent. for money loaned for the purpose of buying real estate without reference to the purpose to be promoted by such purchase. The ordinary building and loan statutes are sustained on the ground that they are designed to provide homes for people, and that the providing of homes is a public necessity that would warrant the classification. The Code of 1892 permitted building and loan associations for this purpose to charge ten per cent., but the act here under review does not require anything to be done which a building and loan association, properly speaking, is created to do. They do exactly the kind of business that private individuals and banks do, and are granted special favors. It will be noted from the reading of the section above quoted that the building and loan associations provided for in this act are building and loan associations only for the purpose of the act. In other words, they are build-

ing and loan associations for the purpose of lending money at ten per cent., and for no other purpose. In the case of *Yazoo & Mississippi Valley Railroad Co.* v. *Southern Railway Co.*, 83 Miss. 746, 36 So. 74, the court said that the provision prohibiting the suspension of a general law by the legislature for the benefit of any individual or private corporation or association could not be passed at all under any circumstances or conditions—that it was absolutely prohibited. If it is not absolutely prohibited in the present case, the act is void because it was not passed in accordance with section 89 of the Constitution, and cannot, therefore, come within the saving clause of that section. This section reads as follows:

"There shall be appointed in each house of the legislature a standing committee in local and private legislation; the house committee to consist of seven representatives, and the senate committee of five senators. No local or private bill shall be passed by either house until it shall have been referred to said committee thereof, and shall have been reported back with a recommendation in writing that it do pass, stating affirmatively the reasons therefor, and why the end to be accomplished should not be reached by a general law, or by a proceeding in court; or if the recommendation of the committee be that the bill do not pass, then it shall not pass the house to which it is so reported unless it be voted for by a majority of all the members elected thereto. If a bill is passed in conformity to the requirements hereof, other than such as are prohibited in the next section, the courts shall not, because of its local, special, or private nature, refuse to enforce it."

It will be noted from this section that the legislature must appoint a local and private committee in both the Senate and the House, and the number of each committee is prescribed by the Constitution. It is then provided that no local or private bill shall be passed by either house until it shall have been referred to the local or private committee of such house and reported back with

143 Miss.—27.

recommendations in writing    stating affirmatively the
reason therefor and why the end to be accomplished
could not be reached by a general law, or by a proceed-
ing in court; or, if the recommendation of the ·committee
be adverse, that it shall not pass unless it be voted for
by a majority of all the members elected to said house.
The wisdom of this provision is apparent, as there had
been a great evil growing out of local and private leg-
islation prior to 1890. It is well known that members
of the legislature are prone to vote for these local and
private bills, if the local member desires, regardless of
their views on the merit of the question. The section
designed to have the legislature informed as to why a
local or special law was necessary and why a general
law could not be passed, or why relief could not be ob-
tained in court.

It was known that members of the legislature rely
greatly upon the recommendations of the committee,
and, as a general rule, stand by the committee's report.
As a journal must be kept of the legislative proceedings
by the terms of the Constitution, members of the local
and private legislative committee would hesitate to rec-
ommend a bill devoid of merit, or which could be pro-
vided for by general law, where their report was to be
published in the journals as a perpetual record. The
concluding clause of the section provides that:

"If a bill is passed in conformity to the requirements
hereof, other than such as are prohibited in the next sec-
tion, the courts shall not, because of its local, special, or
private nature, refuse to enforce it."

It follows as clearly as day follows night that if a
bill is not passed in conformity with the requirements of
this section that the court must refuse to sanction and
enforce its validity. The doctrine of *Hunt* v. *Wright,* 70
Miss. 298, 11 So. 608, and *Ex parte Wren,* 63 Miss. 512,
56 Am. Rep. 825, has no application to section 89 of the
Constitution. They dealt with rule of procedure which
the legislature had power to suspend under the heading

of "Rules of Procedure" from section 54 to section 77 The fact that an act is local or special appears on the face of the act. Appearing so, is it to be treated as void if it violates the sections of the Constitution? That depends solely upon how it was passed. To save it, the court must find it was passed as required by section 89 of the Constitution. It is manifest that the language used in section 89 contemplated that a bill should be passed strictly in conformity to this section with the light before the legislature that the committee's report under the section would give, and the providing of the condition in the section that if the bill is passed in conformity to the requirements hereof, the court shall not refuse to enforce it by the plainest reasoning and agreeable to the rules of interpretation, carries the implication that it must be so passed to have validity. In *State* v. *Henry,* 87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340, the court held that where the Constitution named one rule or provision, by implication it excluded those not named; and it would seem to me that it would be trifling with the plain language of the Constitution to hold that if the bill is a local law and not passed in conformity therewith the court should deal with it as being unconstitutional. The only restriction on the power of the court to so declare is the provision that if it passed in conformity with the requirements, the court shall not refuse to enforce it—otherwise the court's power is full and complete.

Chapter 216, Laws of 1914, was Senate Bill No. 481, Laws of 1914. This bill was introduced in the Senate and referred to the Judiciary Committee, Senate Journal, p. 836. It was reported "do pass" by the Judiciary Committee, p. 844, Senate Journal. It passed the Senate with twenty-seven yeas, receiving a majority of the votes of the Senate, and was then referred to the Judiciary Committee of the House by the speaker, House Journal, 1914, p. 1119, and reported by the Judiciary Committee "do pass" (page 1223). There was a minority re-

port. The bill failed to pass when first voted upon by a vote of fifty-eight yeas (House Journal, pp. 224 and 225), but it finally passed the House with a vote of sixty-four yeas and thirty-eight nays, thirty-five being absent (House Journal, p. 1828); and consequently it did not receive a majority of the votes of the members elected to the House, and it was not referred to the committee provided for by the Constitution itself.

The Constitution is designed to secure the benefits of good, orderly, safe, and sane government, and every officer is charged by his oath to support and maintain it. The founders of the government and the framers of the Constitution purposely created a system of checks and balance between the offices of the government by dividing them into three departments, with the idea that each department would operate as a check upon the other. The court was given final power of decision upon the constitutionality of the acts of the legislature, and was given this power for the express purpose of protecting the people by seeing that the Constitution was observed and respected. The supreme court was intended by the framers of the Constitution to be a Gibraltar against which the winds of sentiment and the waves of passion would blow and beat in vain. It was supposed that this court, as stated by the lamented Justice CALHOUN, was "imperviously padded to all outside clamorous sound or sentiment." If the court would perform its duty and declare laws passed in violation of the Constitution void and refuse to enforce laws passed in disregard of its provisions, the evil of local, special, and private legislation would be speedily remedied.

In *Toombs* v. *Sharkey* (Miss.), 106 So. 273, it was said, in determining whether a law is general or local or special in violation of the Constitution of 1890, "its substance rather than its form will be considered." Applying this rule to this case, it is difficult to see why the act here is not special, as it not only violates sections 87 and 89 of the Constitution, but violates paragraph (d)

of section 90; and if it does violate section 90, the prohibition on the legislature is absolute. The object of the provision (paragraph [d], section 90, of the Constitution) is to have the general laws of the state regulating the rate of interest on money uniform and equal throughout the state. In a recent magazine article, two distinguished authorities stated that the third greatest industry in the United States was only earning somewhat less than three per cent. per annum on its investments. If that be true, and I think it is, what reason can justify the charging of ten per cent., which is more than three times the rate of the average earning of the agricultural industry, the chief industry of this state?

For these reasons, I think the judgment should be reversed.